ZONING COMMISSION OF THE TOWN OF DANBURY
*v.* PETER GRANDIERI ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 3-6311-2669

Argued August 17—decided October 26, 1964

*Abram W. Spiro,* of Danbury, for the appellant (plaintiff).

*Thomas W. Van Lenten,* of Danbury, for the appellee (defendant).

DiCenzo, J. The finding, with such corrections as the appellant is entitled to, discloses the following factual situation.

On September 1, 1960, the zoning commission of the town of Danbury adopted zoning regulations which created certain classes of districts, among which was a class entitled "Rural Districts—RU." The purpose of "Rural Districts—RU" was to provide, in areas slightly less favorable for dense development, districts where traditional rural occupations can be subjected to a minimum of restriction, and also to reduce the density of the residential pattern where soil and topographic conditions are most unfavorable. Section 6 of the "Rural Districts —RU" portion of the zoning regulations permits a number of uses, and more particularly subsection 6.1.2 permits "Farming, truck or nursery gardening, provided that no livestock or poultry except household pets shall be kept on any lot of less than three acres."[1]

The defendants are the owners of certain premises in Danbury consisting of three-quarters of an

---

[1] "Sec. 6—Rural Districts—RU . . .

6.1 – Uses Permitted . . .

6.1.2. "Farming, truck or nursery gardening, provided that no livestock or poultry except household pets shall be kept on any lot of less than three acres, except poultry as provided in paragraph 5.1.7 . . . ."

acre of land, with their house thereon, which they live in and occupy as their home, together with their four minor children, living together as a family group comprising a household. These premises are located within a "Rural District—RU." The defendants have been keeping and maintaining a pony on their premises for the exclusive use of their children. The pony has been kept in an area about 50 feet by 125 feet. This area is surrounded by a split rail fence, and, at a point four feet from the boundary line of a neighbor's property, there are also a regular wire fence, a hedge, and a strip of separate wiring before the hedge. These fences were constructed by the defendants as an enclosure for the pony. At the suggestion of the Humane Society, the defendants have put up an outside shelter for the pony, consisting of a lean-to covered by a canvas. The defendants have always kept their pony out of doors on their land. The defendants' children ride the pony on the defendants' land during their playtime and treat the pony as a pet and playmate. Each child has a deep affection for the pony. The plaintiff zoning commission has notified the defendants to remove the pony from their premises. The defendants have not done so. The plaintiff now seeks injunctive relief.

The controversy arises over the interpretation of the word "livestock," and the meaning of the phrase "household pets" as used in this ordinance. These words are not defined in the ordinance. The plaintiff contends that the pony in this case is livestock, and not a household pet, within the meaning of the zoning regulation, while the defendants assert that the pony is not livestock and is in fact a household pet.

"Livestock" is a word made up of two elements, "live" and "stock." It is a compound word, and

"like many words compounded of different elements, it has a meaning of its own broader than that of its elements considered separately." *Van Clief* v. *Comptroller,* 211 Md. 191, 197. In Webster's International Dictionary of 1901, the compounded word "livestock" did not exist. Therein the word "stock" was given twenty-three definitions as a noun. The agricultural definition then given was "domestic animals or beasts collectively used or raised on a farm." The word stock here connoted pluralism. In subsequent editions of Webster, the meaning of the compounded word "livestock" varied slightly but always retained the plural connotation. In Webster's Collegiate Dictionary of 1960, "livestock" is defined to be "domestic animals used or raised on a farm esp. . . . those kept for profit." Here again is the connotation of pluralism. In Webster's Third New International Dictionary of 1961, "livestock" is defined as "animals of any kind kept or raised for use or pleasure; esp: meat and dairy cattle and draft animals." Here also, the definition denotes more than one. In 3 Burrows, Words and Phrases Judicially Defined, p. 267, "livestock" is defined as "animals of any description . . . [including] cage birds." Here again, the clear connotation of the word is plural in nature. "Live stock" has been defined as "[d]omestic animals used or raised on a farm, especially those kept for profit;" 54 C.J.S. 635, Live, citing *In re Dunkly,* 64 F. Sup. 10, and *Boland* v. *Cecil,* 65 Cal. App. 2d Sup. 832.

The connotation of words is not to be ignored in the interpretation of zoning regulations. For illustration of this, see *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 638. The general purpose of the ordinance would seem to be better served by the plural connotation of the word "livestock." It would be difficult, if not impossible, to reconcile the permitted uses of

farming, truck gardening or nursery gardening on such premises, under regulation 6.1.2, with a prohibition against the keeping of a single animal, which could conceivably be a necessary accessory, under regulation 6.1.6,[2] relating to permitted uses such as a horse-drawn plow, harrow or other equipment. "Legislative intent . . . is not to be found in an isolated sentence. The enactment must be examined in its entirety and its parts reconciled and made operative so far as possible." *McAdams* v. *Barbieri,* 143 Conn. 405, 418; *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382. The expressed intent of such regulations is the intent of the regulations construed as a whole. *McAdams* v. *Barbieri,* supra. It cannot be said that the pet pony in this case is the livestock contemplated by the ordinance.

It only remains to determine whether the trial court was in error in concluding that this pet pony was a household pet. The plaintiff concedes in its brief that a pony may be a pet but rejects the conclusion that this pony can be a household pet within the meaning of that phrase in the zoning ordinance. The only argument advanced by plaintiff in support of this rejection is that a pony is livestock under this ordinance. This argument fails to persuade. Granting that the phrase "household pet" may be somewhat ambiguous because of the not very clear concept of the word "household", nevertheless such ambiguity in a zoning regulation should not be resolved in further derogation of common-law rights. See *Park Construction Co.* v. *Planning & Zoning Board of Appeals,* 142 Conn. 30, 35, and former Chief Justice Baldwin's rationale in construing

---

[2] "6.1.6. Accessory uses, in addition to those permitted under paragraph 5.1.10, may include the parking and storage of vehicles and equipment used in connection with a use on the same premises permitted under paragraphs 6.1.2 through 6.1.5."

the word "household" in *Rathbun* v. *Aetna Casualty Co.*, 144 Conn. 165, 169. The use of an automobile was held to be included in the meaning of the phrase "household use." See *In re Smedley's Estate*, 69 N.Y.S.2d 542. There is no merit to the assignment of error that the trial court erred in concluding that under these particular circumstances a pony is a household pet.

There is no error.

In this opinion KINMONTH, J., concurred; KOSICKI, J., concurred in the result.