FOODLAND SUPER MARKET, LTD., Appellant, *v.* JOSHUA C. AGSALUD, Director of the Department of Labor and Industrial Relations, State of Hawaii; and SHAREEN K. BARROGA, Appellees

NO. 8084

(CIVIL NO. 59609)

DECEMBER 27, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Appellant Foodland Super Market, Ltd. (Foodland), appeals the decision of the court below affirming the determination of the

Referee of the State Department of Labor and Industrial Relations (DLIR) that appellee Shareen K. Barroga (Barroga) was eligible to receive unemployment benefits under Hawaii Revised Statutes (HRS), section 383-29(a)(3) (1976, as amended).[1]

We affirm.

On April 15, 1979, Barroga was informed by Foodland that she was to be suspended from her employment as a part-time cashier for three days beginning Wednesday, April 25, 1979. On April 23, her regular day off,[2] Barroga filed a claim with DLIR for unemployment benefits for those three days.[3] In executing the requisite DLIR claim form, Barroga indicated she was willing and able to work every day of the week and the lowest pay she would accept was $5.81 per

---

[1] Section 383-29 provides in pertinent part:

§ 383-29 *Eligibility for benefits.* (a) An unemployed individual shall be eligible to receive benefits with respect to any week only if the department of labor and industrial relations finds that:

(1) Claim. He has made a claim for benefits with respect to such week in accordance with such regulations as the department may prescribe.

(2) Registration. He has registered for work at, and thereafter continued to report at, an employment office in accordance with such regulations as the department may prescribe, except that the department may, by regulation, waive or alter either or both of the requirements of this paragraph as to individuals attached to regular jobs and as to such other types of cases or situations with respect to which it finds that compliance with such requirements would be oppressive, or would be inconsistent with the purpose of this chapter; provided that no such regulation shall conflict with section 383-21.

(3) Availability. He is able to work and is available for work; provided that no claimant shall be considered ineligible with respect to any week of unemployment for failure to comply with this paragraph if such failure is due to an illness or disability, as evidenced by a physician's certificate, which occurs during an uninterrupted period of unemployment with respect to which benefits are claimed and no work which would have been suitable prior to the beginning of such illness and disability has been offered the claimant.

[2] During the week ending April 28, 1979, Barroga worked on the 22nd and the 24th, had regular days off on the 23rd and 28th, and was suspended on the 25th, 26th and 27th. (R. 83)

[3] Rule 1., e., (2), Regulation I, Relating To The Administration And Enforcement Of The Hawaii Employment Security Law, reads:

2. "Part-total unemployment" means the unemployment of any individual who works less than full time and earns less than his weekly benefit amount under circumstances other than those described in subparagraph 3. below.

Subparagraph 3 relates to "partial unemployment" and is not relevant here. Barroga was part-total unemployed.

hour, her wage rate at Foodland. (R. 28) On April 24, 1979, Barroga registered with the State Employment Office. (R. 30, 81)

On May 7, 1979, on another DLIR form — Summary Of Fact Finding Interview — Barroga indicated she had registered with the State Employment Office on April 24, 1979; she was available for work the week ending April 28, 1979; she looked through the newspapers but did not see anything in her field; she would have accepted less than $5.00 per hour; she could have worked in Honolulu or the Leeward area; she had transportation; her hours were not limited; she could have worked any day of the week; she did not refuse any jobs during the week ending April 28, 1979; the state employment office did not refer her to any jobs; and that office told her there were no openings. (R. 30) On May 8, 1979, after interviewing Barroga, the DLIR Claims Examiner found her available for work. (R. 34-35)

On May 14, 1979, Foodland filed a timely application under HRS § 383-34 (1976) for reconsideration or notice of appeal of the examiner's determination. In its appeal, Foodland acknowledged Barroga was suspended for reasons other than misconduct[4] and limited its appeal only to the question of Barroga's availability for work. (R. 37) The appeal was heard by referee Gregg H. Young on May 30, 1979. (R. 42)

At the hearing Barroga testified that she was looking for employment paying $5.00 per hour, and that she intended to work only during her period of suspension and go back to Foodland. (R. 81-82) Foodland presented evidence that none of the major markets in Honolulu would hire anyone for a three-day period, and that $5.81 an hour was unreasonable pay for a cashier-checker in a supermarket. (R. 86-87) On June 14, 1979, the referee reversed the determination of the DLIR and found that because Barroga intended to go back to work at Foodland, she was not attached to the labor market and, therefore, was unavailable for work. (R. 43)

On June 25, 1979, Howard Tanji, a DLIR unemployment insurance specialist, applied under HRS § 383-38 for a reopening of the

---

[4] HRS § 383-30(2) (1981 Supp.) provides that an individual is disqualified for benefits if he or she has been discharged for misconduct.

referee's decision on the basis that Barroga's unemployment was not of her doing; that Barroga was willing to work for Foodland but was not offered work; and that her attachment to Foodland[5] negated the need for her to seek other employment during the suspension. (R. 45) A rehearing was held on August 13, 1979. On October 4, 1979, the referee reversed his earlier decision and found that Barroga was able to and available for work at Foodland and since she was suspended for reasons other than misconduct, her availability was preserved. (R. 73-74)

On November 5, 1979, Foodland appealed to the circuit court and a hearing was held on May 27, 1980. The court found that Barroga had not limited her availability for work, that the limitation was imposed by Foodland and Barroga was ready and willing to work the full customary work week. The court found she was available on the open labor market for the three days of her suspension and she was available to Foodland for the two days offered by them, and upon the record no error was made by the referee. (T. 5-27-80) On August 22, 1980, the court entered its order holding that the decision of the referee "is not affected by error of law nor otherwise violative of the standards set forth in H.R.S. § 91-14(g)1-6". Foodland filed its notice of appeal on September 12, 1980.

The dispositive question is whether the court below was clearly erroneous in upholding the decision of the referee. We answer no and affirm.

The law is well established in this jurisdiction that judicial review of decisions of administrative agencies is governed by the clearly erroneous rule. HRS § 91-14(g)(5); *Homes Consultant Co., Inc. v. Agsalud,* 2 Haw. App. 421, 633 P.2d 564 (1981). A decision of an administrative agency is clearly erroneous if it is not supported by substantial evidence in the record, or if the court is left with a definite and firm conviction that a mistake has been made in view of

---

[5] The DLIR's Regulation I, Rule 1., f., Rules and Regulations Relating to the Hawaii Employment Security Law reads:

f. "Attached to a regular employer". An individual is attached to an employer where work is being offered each week or, if no work is being offered, the employer is maintaining the individual on the payroll by paying for a medical insurance plan or maintaining the employee's sick leave or vacation credits, or there is a definite return to work date with the same employer within four (4) weeks.

the reliable, probative, and substantial evidence on the whole record. *Id.*, 2 Haw. App. at 425, 633 P.2d at 568; *In Re Kauai Electric Division of Citizens Utility Co.*, 60 Haw. 166, 590 P.2d 524 (1978); *DeFries v. Association of Owners, 999 Wilder*, 57 Haw. 296, 555 P.2d 855 (1976); *De Victoria v. H & K Contractors*, 56 Haw. 552, 545 P.2d 692 (1976); *Hamabata v. Hawaiian Insurance and Guaranty Co., Ltd.*, 1 Haw. App. 350, 619 P.2d 516 (1980). Review of the lower court's decision by this court is likewise governed by the clearly erroneous rule.[6] HRS § 91-15 (1981 Supp.); Rule 52(a), Hawaii Rules of Civil Procedure (HRCP) (1980); *Homes Consultant Co., Inc. v. Agsalud, supra.*

Examination of the record convinces us that there is substantial evidence to support the referee's decision and we are not firmly convinced that a mistake has been made, either by the lower court or the referee.

An applicant becomes eligible for unemployment benefits under HRS § 383-29(a)(1), (2), and (3), by filing a claim, registering at an employment office, and being able to and available for work. Barroga complied with the first two requirements. The question is whether she was available for work under the statute.

We must, of course, be guided by the precept that the Hawaii Unemployment Security Law should be liberally construed in order to achieve the beneficent purpose of relief of workers under the stress of unemployment occasioned through no fault of their own. *Berkoff v. Hasegawa*, 55 Haw. 22, 27, 514 P.2d 575, 579 (1973). The intention of the act is to provide benefits for the person who is willing and ready to obtain employment so that he may support himself and his family, and the phrase "available for work" is designed to test his continued and current attachment to the labor force. Whether one is "available for work," within the meaning of the act, depends to a large extent upon the facts and circumstances in each case. No precise line can be drawn between availability and unavailability and, in making that demarcation in each case the interests of the witnes-

---

[6] Foodland argues that the standard of review on appeal from the lower court is established by HRS § 91-14(g). This is clearly an erroneous reading of the law. Hawaii Revised Statutes § 91-14(g) relates to judicial review of an agency's decision, not the appellate review of a lower court's review of that decision.

ses, the probability of their assertions, the admitted facts and other relevant facts and circumstances should be considered so that benefits will be paid only to eligible persons. *Fleiszig v. Board of Review of Division of Unemployment Compensation of Department of Labor*, 104 N.E.2d 818 (Ill. 1952).

The statute does not define "availability." However, Regulation II, Rule 2, Rules and Regulations Relating to the Hawaii Employment Security Law, promulgated by the DLIR states, in relevant part:

Rule 2. *Availability.* A claimant must be able and available for suitable work for each day of the customary work week of his customary occupation which falls within the week for which a claim is filed.[7] [Footnote added.]

a. *Able to work.* He must have the physical and mental ability to perform the usual duties of his customary occupation or other work for which he is reasonably fitted by training and experience.

b. *Availability for work.* An individual is generally considered available only if he is ready and willing to accept employment for which he is reasonably fitted by training and experience. He must intend and wish to work, and there must be no undue restrictions either self-imposed or created by force of circumstances which prevent him from accepting employment.

He must be willing to accept the wages and hours and days of employment that are prevailing or customary in the community in which he is seeking work. He must be available in a labor market area where there is a reasonable demand for his services. The geographical extent of such area is limited to the area in which the claimant lives and within which the claimant rea-

---

[7] Rule 1., g., of Regulation I reads:

g. "Week" means a period of seven (7) consecutive calendar days commencing with Sunday and ending at midnight the following Saturday, except that (1) week of unemployment of an individual who has performed less than full-time work for his regular employer may be deemed to begin with the first day of such individual's established pay period, upon showing by the employer that the submission of low earnings report as required under rule 5.e. of this regulation for periods other than established payroll weeks would be unduly burdensome, and (2) with respect to interstate claimants for whom Hawaii is the liable state, "week" may be the period used by the agent state.

sonably can be expected to commute to work. A claimant is expected to avail himself of any reasonable and available means of transportation, including public transportation and means of transportation customarily employed by persons in his community. All individuals claiming benefits should make personal efforts to find work as are customarily made by persons in the same occupation, who are genuinely interested in obtaining employment. An individual should use the facilities and methods which are normally used by persons in his occupation when seeking work. As a claimant's length of unemployment increases and he has been unable to find work in his customary occupation, he may be required to:

1. Seek work in some other occupation for which he is reasonably fitted by training and experience and in which vacancies exist;

2. Lower his wage demands;

3. Broaden the geographic area in which he will accept work; or

4. Accept counseling for possible retraining or a change in occupation.

Foodland argues that Barroga was not attached to the labor market, because she was still employed by Foodland and intended to return to Foodland when her suspension was over. The limited period of employment and the wages she was seeking, Foodland says, were self-imposed conditions that took her out of the labor market because no other employer in the industry would hire anyone for such a short time at such a high wage.[8] Foodland cites a number of cases to support its position. However, those cases are distinguishable from the instant case in that the claimants there had in fact been turned down by prospective employers because the claimants indicated the employment was short term only or the claimants were in fact retired and not actively seeking work. In the case at bar, no employer had in fact passed upon Barroga's circumstances.

---

[8] We do not consider Foodland's argument that the decision awards Barroga for unemployment resulting from her misconduct, since Foodland admits the suspension was not for reasons of misconduct.

DLIR and Barroga argue that Barroga was attached to the labor market, because she was in fact attached to an employer and was available for work in the week in question at Foodland and any other employer who would hire her for the three days of her suspension. They claim that she placed no limitation on her availability and she was not voluntarily unemployed.

Comparing Barroga's actions and statements against the language of Rule 2, Regulation II, *supra,* we find there was substantial evidence to support the referee's determination. Certainly Barroga wished to work and the restrictions on her potential employment were not caused by her misconduct. Barroga had transportation available so that she could reach a wide labor market. Although she had set the wage rate she was seeking at $5.81 per hour, she did testify that she would have accepted less than $5.00. We do not find this defeats her eligibility since Barroga certainly had the right to "test the market" to see if she could obtain that rate. If she could not and continued to insist on that rate during further unemployment, she might then have been declared ineligible.

Foodland argues that its evidence shows that there was no market for Barroga's services based on her circumstances. The referee was not persuaded by that testimony and we are bound by his assessment of credibility. Moreover, we find the contention to be somewhat incredible since Barroga was in fact earning $5.81 per hour at Foodland.

Foodland further argues that the fact that Barroga did not contact any potential employers indicates she was not seriously looking for work. The argument is without merit. She did register for work and was not referred to any employers. She looked through the classified ads and did not find any work available. Those are normally the first steps a job seeker takes. The mere fact that she did not "pound the pavements" did not make her unavailable.

We have not here attempted to establish a broad rule of availability, since each case must be determined on its own facts and circumstances. *Fleiszig v. Board, supra.* We only hold that the record supports the finding of the referee and the lower court.

Affirmed.

*Richard M. Rand (Ernest C. Moore, III* with him on the briefs; *Torkildson, Katz, Jossem & Loden* of counsel) for appellant.

*James Lasetter (Carol K. Yamamoto* on the brief), Deputy Attorneys

General, for appellee Department of Labor and Industrial Relations.

*Lowell K. Y. Chun-Hoon (Herbert Takahashi* with him on the brief; *King, Nakamura & Takahashi* of counsel) for appellee Shareen K. Barroga.