FOSTER VILLAGE COMMUNITY ASSOCIATION and EAST FOSTER VILLAGE COMMUNITY ASSOCIATION, Appellants, *v.* JERRY HESS, in her representative capacity as Chairman, ZONING BOARD OF APPEALS, City & County of Honolulu, and CONNIE CHUN, Appellees

NO. 8789

(CIVIL NO. 66540)

AUGUST 9, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF.THE COURT BY HEEN, J.

This appeal by Foster Village Community Association and East Foster Village Community Association (hereinafter appellants) from the decision of the Honolulu Zoning Board of Appeals (ZBA) presents the novel question whether a pig is a pet and thus permitted as an accessory use in a residential neighborhood, and the mundane question whether a decision on that issue by the ZBA is a rule-making function. (Where appropriate in this opinion appellees Jerry Hess, chairman of the ZBA, the ZBA, and Connie Chun (Chun), will collectively be referred to as appellees.) The first circuit court affirmed the decision of the ZBA and we affirm the court.

Chun and her family have for several years owned a pig[1] which they have kept in the yard of their Foster Village residence in a neighborhood zoned as R-5 Residential by the City and County of Honolulu.

On November 25, 1980, the Building Department of the City issued to Chun a notice of violation of the Comprehensive Zoning Code (CZC), specifically section 21-5.41 of the Revised

---

[1] Appellants point out that, since Sooey (the animal's name) weighs between 1200 and 1600 pounds, it should really be called a hog. However, in the vernacular of this community, no such distinctions are made and we will refer to the animal in this opinion as a pig.

Ordinances of Honolulu (ROH) (1978),[2] and directed her to remove the pig within ten days or face prosecution.[3]

In December 1980, Chun filed an application with the ZBA for a variance from the CZC to allow her to keep the pig as a pet.[4] On December 15, 1980, the Director of the Department of Land Utilization (DLU) informed the Aliamanu/Salt Lake/

---

[2] ROH, chapter 21 incorporates the CZC by reference. The section under which Chun was cited reads as follows:

*Sec. 21-5.41. Use Regulations.* All of the uses and structures permitted in the R-4 Residential district shall be permitted in the R-5 Residential district.

The scheme of the CZC is such that in the regulations applicable to the R-1 district (§ 21-5.1 - § 21-5.7), the basic uses and structures permitted in all residential districts are established. Thereafter, the CZC establishes six such residential districts, R-2 through R-7, each district allowing a progressively smaller lot size. Each district also allows the same uses and structures as the immediately preceding one, except where specifically otherwise set forth in the succeeding district.

The provisions of the R-1 Residential district regulations pertinent to this opinion are as follows:

Within an R-1 Residential district, only the following uses and structures shall be permitted:

(a) Principal uses and structures:

(1) Agricultural and horticultural uses and structures; provided that *uses and structures relating to the keeping of livestock, poultry or bees shall not be allowed, except as set forth in the provisions relating to accessory uses;*

\*   \*   \*

(3) Dwellings, one-family detached;

\*   \*   \*

(b) Accessory uses and structures. *Uses and structures which are customarily accessory and clearly incidental and subordinate to principal uses and structures,* including: [Emphasis added.]

\*   \*   \*

CZC § 21-5.2.

[3] Violations of the CZC are punishable by a fine of $1,000 or 30 days incarceration, or both. CZC § 21-1.6.

[4] The ZBA is established by the Revised Charter of Honolulu (RCH), § 6-908 (1978), and its authority to hear and determine petitions for variances from the provisions of the CZC is established by RCH § 6-909(b) and § 21-1.5 of the CZC.

RCH § 6-909(b) reads as follows:

Section 6-909. Powers, Duties and Functions. The zoning board of appeals shall:

\*   \*   \*

Foster Village Neighborhood Board No. 18[5] that the variance application had been received. The matter was investigated by the deputy director of the DLU who informed Chun by letter dated December 29, 1980 that, "[I]t is the ruling of this department that you are not in violation of the Comprehensive Zoning Code by keeping a single domesticated pig in a residential area as a pet." Therefore, a variance was not required. The neighborhood board protested the decision and requested a hearing before the ZBA. The board was informed that it could not appeal because one city agency could not appeal the action of another city agency, but that another group "with standing in the case" could.

By letters dated January 29 and February 6, 1981, appellants notified the DLU that they objected to its ruling and requested a hearing before the ZBA. An appeal was granted and a hearing was held on May 7, 1981. Appellants and Chun were informed of the hearing by letters dated April 24, 1981, and notice of the hearing was published in the Honolulu Advertiser on April 27, 1981. Chun intervened and participated in the hearing.

After taking evidence from all parties, the ZBA affirmed the action of the DLU and directed the deputy corporation counsel to prepare the findings of fact. The ZBA formally

---

(b) Hear and determine petitions for varying the application of the zoning ordinance with respect to a specific parcel of land and may grant such a variance upon the ground of unnecessary hardship if the record shows that (1) the applicant would be deprived of the reasonable use of such land or building if it were used only for the purpose allowed in that zone; (2) the request of the applicant is due to unique circumstances and not the general conditions in the neighborhood, so that the reasonableness of the neighborhood zoning is not drawn into question; and (3) the use sought to be authorized by the variance will not alter the essential character of the locality nor be contrary to the intent and purpose of the zoning ordinance.

The board shall specify the particular evidence which supports the granting of a variance.

CZC § 21-1.5 reads as follows:

The Zoning Board of Appeals shall hear and determine petitions for varying the application of the provisions of this chapter pursuant to section 6-909 of the Revised Charter of Honolulu 1973.

[5] RCH § 14-101 mandated the establishment of neighborhood boards to increase and assure effective citizen participation in the decisions of the city.

considered the proposed findings and conclusions at a meeting on June 25, 1981, and finally adopted them along with the final decision and order on July 9, 1981, over appellants' objections. The ZBA found that the pig was not being kept for sale, stud purposes or food; that it was kept very clean and caused no offensive odors or noises; that the pig was petted and played with by the members of Chun's family and by their neighbors and the neighbors' children; that the matter had been investigated by the DLU and discussed with a deputy corporation counsel; and that the DLU had also researched Hawaii case law. The ZBA concluded as a matter of law that the DLU had not acted arbitrarily or capriciously, nor did it abuse its discretion when it determined that whether or not an animal is a pet is not dependent upon the kind of animal it is; that a pig could be a pet; that a pet is legal as an accessory use to a residence; that the pig in question was a pet and a legal accessory use; and, therefore, Chun was not in violation of the CZC.

Notice of appeal was timely filed and a hearing was held in first circuit court on November 20, 1981. On May 18, 1982, the circuit court entered its order affirming the decision of the ZBA and dismissed the appeal. Appellants filed their notice of appeal on June 2, 1982.

## I.

Appellants argue that the court below erred as a matter of law because a pig is livestock by definition and the keeping of a pig is not an accessory use in a residential neighborhood. They contend, therefore, that the court erred in sustaining the ZBA's holding that whether a pig is livestock or a pet is dependent upon the use to which the pig is put and that the keeping of a pig as a pet is an accessory use allowed in a residential neighborhood.

## A.

The standard of judicial review of administrative action is governed by the Hawaii Administrative Procedure Act (HAPA), chapter 91, Hawaii Revised Statutes (HRS) (1976, as

amended). HRS § 91-14 (1976, as amended) provides in part:
§ 91-14 Judicial review of contested cases.

\* \* \*

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

\* \* \*

(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

\* \* \*

In turn, the standard for this court's review of a circuit court's ruling on administrative appeals is governed by HRS § 91-15 (1976, as amended), which reads:
§ 91-15 Appeals. Review of any final judgment of the circuit court under this chapter shall be governed by chapter 602.
Construction of the provisions of the CZC is a matter of statutory interpretation, the correctness of which is freely reviewable by this court under HRS § 602-5(1) (1982 Supp.); 2 Am. Jur. 2d *Administrative Law* § 656 (1962). On the other hand, judicial review of factual matters is limited by the clearly erroneous rule. *Jones v. Hawaiian Electric Co., Inc.,* 64 Haw. 289, 639 P.2d 1103 (1982); *McGlone v. Inaba,* 64 Haw. 27, 636 P.2d 158 (1981); *Feliciano v. Board of Trustees,* 4 Haw. App. 26, 659 P.2d 77 (1983); *Foodland Super Market, Ltd. v. Agsalud,* 3 Haw. App. 569, 656 P.2d 100 (1982).[6]

---

[6] In *Foodland, supra,* we stated,

The law is well established in this jurisdiction that judicial review of decisions of administrative agencies is governed by the clearly erroneous rule. HRS § 91-14(g)(5); *Homes Consultant Co., Inc. v. Agsalud,* 2 Haw. App. 421, 633 P.2d 564

B.

Courts apply the same rules of construction to municipal ordinances as they do to statutes, *Waikiki Resort Hotel, Inc. v. City and County of Honolulu,* 63 Haw. 222, 624 P.2d 1353 (1981), and the primary duty of the courts in interpreting statutes is to ascertain and give effect to the intention of the legislature. *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 639 P.2d 1088, *appeal dismissed,* ___ U.S. ___, 103 S. Ct. 367, 74 L.Ed.2d 504 (1982); *In re Hawaiian Telephone Co.,* 61 Haw. 572, 608 P.2d 383 (1980). If possible, legislative intent should be obtained primarily from the language of the statute, *Treloar v. Swinerton and Walberg Co.,* 65 Haw. 415, 653 P.2d 420 (1982), and the language must be read in the context of the entire statute and construed in a manner consistent with the purposes of the statutes. *Waikiki Resort Hotel, Inc. v. City and County, supra. Lussier v. Mau-Van Development, Inc. II,* 4 Haw. App. 421, 667 P.2d 830 (1983). Zoning laws and ordinances are strictly construed, as they are in derogation of the common law, and their provisions may not be extended by implication. Nevertheless, they should be read according to the natural and most obvious import of the language when there is no manifest legislative intent to the contrary. *County of Maui v. Puamana Management Corp.,* 2 Haw. App. 352, 631 P.2d 1215 (1981). Ambiguities in a zoning regulation should not be

---

(1981). A decision of an administrative agency is clearly erroneous if it is not supported by substantial evidence in the record, or if the court is left with a definite and firm conviction that a mistake has been made in view of the reliable, probative, and substantial evidence on the whole record. *Id.,* 2 Haw. App. at 425, 633 P.2d at 568; *In Re Kauai Electric Division of Citizens Utility Co.,* 60 Haw. 166, 590 P.2d 524 (1978); *DeFries v. Association of Owners, 999 Wilder,* 57 Haw. 296, 555 P.2d 855 (1976); *De Victoria v. H & K Contractors,* 56 Haw. 552, 545 P.2d 692 (1976); *Hamabata v. Hawaiian Insurance and Guaranty Co., Ltd.,* 1 Haw. App. 350, 619 P.2d 516 (1980). Review of the lower court's decision by this court is likewise governed by the clearly erroneous rule. HRS § 91-15 (1981 Supp.); Rule 52(a), Hawaii Rules of Civil Procedure (HRCP) (1980); *Homes Consultant Co., Inc. v. Agsalud, supra.* [Footnote omitted.]
*Foodland Super Market, Ltd. v. Agsalud,* 3 Haw. App. 569, 572-73, 656 P.2d 100, 103 (1982).

resolved in further derogation of common-law rights. *Zoning Commission of Town of Danbury v. Grandieri,* 3 Conn. Cir. Ct. 71, 208 A.2d 357 (1964).

The CZC does not define "livestock," and does not specifically provide for or define "pets." Although appellants concede that a pet is an accessory use, they argue that the clear import of the word livestock includes a solitary pig, even if kept as a pet, and that a pig cannot be an accessory use because it is not a customary use in a residential district. The real thrust of appellants' argument is that since a pig is a very unusual pet, it is not customarily found in a residential district and, since a pig is livestock by definition, the keeping of the pig in the instant case is a violation of the CZC.

Appellants contend that the fact that a pig may be a pet does not take it out of the classification of livestock. They cite Webster's Third International Dictionary (1971) defining livestock as:

Animals of any kind kept or raised for use or pleasure; *esp.:* meat and dairy cattle and draft animals — opposed to *dead* stock.

At oral argument appellees conceded[7] that they have no quarrel with that definition. However, they assert that in the instant case, the DLU was correct in interpreting the CZC to mean that an animal normally considered livestock in the generic sense may be a pet and therefore, a permitted accessory use in a residential zone within the meaning of the CZC. Appellees cite Webster's New Third International Dictionary (1981) defining pet as:

A domesticated animal kept for pleasure rather than utility.

We think appellants' argument is too strained and does not reflect the true intent of the city council. Under appellants' argument, the only animals permitted even as pets in residential areas would be those that are customarily found in a

---

[7] Chun did not file a brief, but filed a joinder in the answering brief, and did not argue.

residential neighborhood, such as dogs and cats, or birds.[8] The practical effect of appellants' position would be an extension of the zoning ordinance in derogation of the common-law, because under their interpretation every householder desiring to keep an unusual pet (we are aware of monkeys, skunks, white rats, snakes and iguanas)[9] would first have to determine if such pets are usually and customarily kept in his neighborhood and, perhaps, other neighborhoods.[10] Clearly that would be in derogation of every property owner's right to use his property in any lawful manner. *See Zoning Commission of Town of Danbury v. Grandieri, supra.*

Under CZC § 21-1.10, an accessory use:

(1) Is a use which is conducted on the same zoning lot as the principal use to which it is related (whether located within the same building or an accessory building or structure, or as an accessory use of land), or which is conducted on a contiguous lot (in the same ownership), and

(2) Is clearly incidental to, and customarily found in connection with such principal use, and

(3) Is operated and maintained substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors of the zoning lot with the principal use.

We think the language of CZC § 21-5.2(a) and (b),[11] relating to permitted uses and accessory uses in residential districts, when read together with the foregoing definition of an accessory use and in the context of the entire CZC clearly supports the interpretation of the DLU and the ZBA.

---

[8] Appellants conceded at oral argument that geese may be allowed as pets in a residential neighborhood.

[9] We are also aware that the importation of some of these animals into Hawaii is illegal. *See* HRS § 150A-6 (1976). However, the frequency with which such prohibited animals are found here indicates they are in fact being imported, presumably as pets. Our decision does not in any way abrogate the prohibition and does not mean that an illegally imported animal may be kept as a pet.

[10] Query how large a geographic area would have to be surveyed in order to determine custom.

[11] *See* footnote 2.

The clear intent of CZC § 21-5.2(a) and (b) is in fact to allow the keeping of an animal which may be classified as livestock in a residential district but only in accordance with the "provisions relating to accessory uses." CZC § 21-5.2(a)(1) is not an absolute prohibition of all livestock in all residential districts. Rather, the keeping of an animal normally considered to be livestock can be a permitted use if its maintenance and use comes within the provisions of CZC § 21-1.10. It follows then, as in this case, that it is the nature of the use that is determinative not the nature of the animal. The DLU and the ZBA were correct in so interpreting the CZC.

In accordance with the foregoing discussion, we hold that the circuit court was correct in ruling that the decision of the ZBA was not affected by any error of law.

## C.

We further find that the ruling of the circuit court that the ZBA's ruling was not clearly erroneous was in itself not clearly erroneous, the decision of the DLU and the ZBA being supported by substantial evidence. *See Jones v. Hawaiian Electric Co., Inc., supra; McGlone v. Inaba, supra; Feliciano v. Board of Trustees, supra; Foodland Super Market, Ltd. v. Agsalud, supra; City and County of Honolulu v. Ambler,* 1 Haw. App. 589, 623 P.2d 92 (1981).

The extent of the ZBA's authority[12] to determine matters on appeal from the DLU is limited by RCH § 6-909(a), which states:

Section 6-909. Powers, Duties and Functions. The zoning board of appeals shall:

(a) Hear and determine appeals from the actions of the director of land utilization in the administration of the

---

[12] CZC § 21-1.4 provides for appeals from actions of the director of the DLU and reads as follows:

*Sec. 21-1.4. Appeals.* Appeals from the actions of the Director in the administration of the provisions of this chapter shall be as provided by Section 6-909 of the Revised Charter of Honolulu 1973.

zoning and subdivision ordinances and any rules and regulations adopted pursuant thereto. An appeal shall be sustained only if the board finds that the director's action was based on an erroneous finding of a material fact, or that the director had acted in an arbitrary or capricious manner or had manifestly abused his discretion.

\*   \*   \*

The ZBA adhered very strictly to the limits of its powers. It heard all the evidence upon which the DLU had made its determination. The ZBA did not find any erroneous finding of any material fact and found that the DLU had neither acted in an arbitrary or capricious manner nor abused its discretion. The evidence in the record clearly supports the findings of the DLU and the ZBA. Consequently, we hold that the circuit court was not clearly erroneous in sustaining the action of the ZBA.

II.

Appellants argue that in arriving at their decision on the matter in question the DLU and the ZBA engaged in "rule-making," because they issued a "rule" as defined by HRS § 91-1(4) (1976).[13] Appellants argue that the DLU and the ZBA

---

[13] HRS § 91-1(4) reads as follows:
§ 91-1 Definitions. For the purpose of this chapter:

\*   \*   \*

(4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

were required to follow the requirements of HRS § 91-3[14] and give "at least twenty days' notice for a public hearing." Since notice of the hearing in this case was less than twenty days, appellants contend that the decision was invalid.

Appellees argue that the action by the DLU and the ZBA was really a declaratory ruling authorized by HRS § 91-8,[15] and which is specifically excluded from the definition of "rule" in HRS § 91-1(4). Appellees do not cite any cases in support of their position, relying entirely on the language of the statute. However, the statute requires the agency to adopt rules governing the form of petition for declaratory rulings and procedures for their submission. Appellees have made no showing that such rules exist or were complied with in this case.

We reject both arguments and find that the facts outlined above relating to the procedures followed indicate that the matter was handled as a contested case, *see Punohu v. Sunn I,* 66 Haw. 485, 666 P.2d 1133 (1983), and that the DLU and the

---

[14] HRS § 91-3 (1976, as amended) provides in pertinent part:
Procedure for adoption, amendment or repeal of rules.
(a) Prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, the adopting agency shall:
(1) Give at least twenty days' notice for a public hearing. Such notice shall include a statement of the substance of the proposed rule, and of the date, time and place where interested persons may be heard thereon. The notice shall be mailed to all persons who have made a timely written request of the agency for advance notice of its rulemaking proceedings, and published at least once in a newspaper of general circulation in the State for state agencies and in the county for county agencies.

* * *

[15] HRS § 91-8 (1976) provides:
Declaratory rulings by agencies. Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

ZBA were engaged in an adjudicative function and not a rule-making or legislative function.[16]

The HAPA was enacted in 1961,[17] "to provide a uniform administrative procedure for all state and county boards, commissions, departments or offices which would encompass the procedure of rule making and adjudication of contested cases." H. Stand. Comm. Rep. No. 8, 1st Hawaii Leg., 1st Sess. 1961, *reprinted in* House Journal 653 (1962). The act is dichotomized to establish different procedures to be followed by state and county agencies in establishing rules and regulations and in adjudicating contested cases, and is patterned after the Revised Model Administrative Procedure Act. *Id.* at 655.

In *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 522 P.2d 1255 (1974), it was pointed out that the HAPA, although patterned after the model act, revised the definition of the word rule by including therein agency statements of "particular" as well as "general" applicability, in order to more closely follow the Federal Administrative Procedure Act.[18] *Id.* 55 Haw. at 485, n.13, 522 P.2d at 1261, n.13. Such language would seem to include within the ambit of the definition all matters of adjudication, since they involve agency statements of particular application, including the agency decision in this case.

The distinction between rule-making and adjudication is often troublesome, particularly here because of the statutory language. However, it is generally accepted that the distinguishing characteristic of rule-making is the generality of effect

---

[16] We note that HRS § 91-9.5 governing notices of hearing in contested cases requires that all parties be given fifteen days notice of hearings. The parties were given less than fifteen days notice in this case. Appellants do not raise that matter on appeal. Furthermore, appellants received notice, appeared at the ZBA hearing, participated extensively without objection and cannot be said to have suffered any prejudice. In fact, the record reveals appellants were the appealing parties, having been accorded standing to do so by the DLU.

[17] Act 103, Session Laws Of Hawaii 1961.

[18] The federal act includes the language "particular applicability" because the congress wanted to be sure that such things as future rates, wages, and prices would be covered. Note, *"Rule Making," "Adjudication" and Exemptions Under the Administrative Procedure Act,* 95 U. Pa. L. Rev. 621 at 625 *et seq.* (1946-47).

of the agency decision, and that literal application of the words "or particular" would obviate completely the adjudicatory functions of administrative agencies. *Id.;* 1 Davis, *Administrative Law Treatise* § 5.02 (1958) (hereinafter "Davis").

This distinction [between rule-making and adjudication] reflects the consideration that in rule making policy is dominant, rather than accusatory or disciplinary elements, and consequently such factors as the demeanor of witnesses are of little significance.

\*   \*   \*

Rule making is agency action governing the future conduct either of groups of persons or of a single individual; it is essentially legislative in nature, not only because it operates in the future, but also because it is concerned largely with considerations of policy. In rule making, disciplinary or accusatory elements are absent. Typically, the issues relate not to the evidentiary facts, as to which the demeanor of witnesses would often be important, but rather as to the inferences to be drawn from the facts or as to the predictions of future trends to be based upon them.

\*   \*   \*

Adjudication, conversely, is concerned with the determination of past and present rights and liabilities. Typically, there is involved a determination as to whether past conduct was unlawful, so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action. Inevitably, in such proceedings, issues of fact often are sharply controverted, with the consequence that the demeanor of witnesses becomes important and should be observed by an agency officer who will play a substantial role in the decision.

Note, *"Rule Making," "Adjudication" And Exemptions Under The Administrative Procedure Act,* 95 U. Pa. L. Rev. 621 (1946-47).

In his treatise on administrative law, Professor Davis writes:

One of the most helpful definitions of rule making is that of

Professor Fuchs, who concludes that rule making *should* be defined as 'the issuance of regulations or the making of determinations which are addressed to indicated but unnamed and unspecified persons or situations.' Another definition is that of Mr. Dickinson: 'What distinguishes legislation from adjudication is that the former affects the rights of individuals in the abstract and must be applied in a further proceeding before the legal position of any particular individual will be definitely touched by it; while adjudication operates concretely upon individuals in their individual capacity.' * * *

1 Davis, *supra,* § 5.01.

This case began with Chun receiving the notice of zoning code violation. Chun's application for variance did not change the fact that the proceeding was accusatory in nature and was for the purpose of determining Chun's past and present rights and liabilities. Although the DLU and ZBA ruling was an agency statement of "particular applicability," the agency's determination acted concretely upon Chun in her individual capacity and was a determination only of her past and present liability. Therefore, the notice requirement of the rule-making provisions of HRS § 91-3 are not applicable and appellants' argument has no merit.

Affirmed.

*Earle A. Partington (Jack F. Schweigert* with him on the brief; *Schweigert & Associates* of counsel) for appellants.

*Steven S. C. Lim,* Deputy Corporation Counsel, City and County of Honolulu, for appellees Jerry Hess and Zoning Board of Appeals.

*Connie C. Chun,* appellee, *pro se* (Joined in the answering brief).