RICHARD DANUSER, Claimant-Appellee, *v.* J. A. THOMPSON AND SON, INC. and INDUSTRIAL INDEMNITY COMPANY, Employer, Insurance Carrier-Appellant, and HI-WAY CONSTRUCTION AND CONTRACTING and ARGONAUT INSURANCE COMPANY, Employer, Insurance Carrier-Appellee, and SPECIAL COMPENSATION FUND, Appellee

NO. 8068

(CASE NO. AB 78-253 (2-73-08076))

DECEMBER 21, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Employer J.A. Thompson and Son, Inc. and its insurance carrier Industrial Indemnity Co. (collectively Thompson), appeal from the

May 1, 1980 decision and order of the Labor and Industrial Relations Appeals Board (Board) which found that Thompson was a special employer of claimant Richard Danuser (Danuser) and was therefore required to pay Workers' Compensation benefits to Danuser. The only issue on appeal is whether the Board erred in that finding. We find no error and affirm.

In 1973, Thompson was engaged, as a general contractor, in the construction of the Interstate Highway H-2 project between Kipapa Gulch and the Waiahole Ditch. The construction required soil to be moved from one area to another in order to level the ground. This was accomplished by use of a Catscraper.

Although Thompson owned several Catscrapers, it had to rent two Catscrapers, together with operators from Hi-Way Transportation and Contracting Co., Ltd. (Hi-Way) in order to complete the project within the contract period. Hi-Way was a construction contractor, but also rented out its equipment and operators. Thompson agreed to pay Hi-Way an hourly rate. Hi-Way maintained the equipment and paid the operators. The operator's hours, pay, vacations, lunch breaks, and other related matters were set by a union contract with Hi-Way. Thompson could not terminate the operators but did have the power to send an operator back and request another if the operator did not produce satisfactory results.

Hi-Way's operators were instructed to report to Thompson's job site beginning in March of 1973. Each day, they, along with Thompson's operators, received general instructions regarding their assignments. They were not instructed as to the basic operation of their Catscrapers. Danuser was one of those operators sent over from Hi-Way.

In April of 1973 Danuser sustained a lower back injury while working on the Thompson project. He filed a workers' compensation claim with the Department of Labor and Industrial Relations. Hi-Way and Thompson disagreed as to who was liable for Danuser's workers' compensation benefits. On June 21, 1978, the Director of the Department of Labor and Industrial Relations issued a Decision and Order holding Thompson solely liable for the payments. Thompson appealed to the Board. On May 1, 1980, the Board issued its Decision and Order finding that Thompson was the special employer of Danuser and holding that Thompson was solely liable.

Thompson's motion for reconsideration was denied by the Board. This appeal followed.

Thompson contends that the Board erred in finding that it was the special employer of Danuser and, hence, liable for all of the workers' compensation payments.

The Board's determination will not be overturned on appeal unless the record reveals it to be clearly erroneous, or arbitrary, capricious or an abuse of discretion. HRS § 91-14(g) (1976); *Yoshino v. Saga Food Service,* 59 Haw. 139, 577 P.2d 787 (1978); *De Victoria v. H & K Contractors,* 56 Haw. 552, 545 P.2d 692 (1976).

Under the clearly erroneous standard, this court cannot set aside the findings of an administrative agency except where there is not substantial evidence in the record to support those findings or we are left with the definite and firm conviction that a mistake has been made. *DeFries v. Association of Owners, 999 Wilder,* 57 Haw. 296, 555 P.2d 855 (1976); *De Victoria v. H & K Contractors, supra.* A review of the record shows substantial evidence and has not left us with the definite and firm conviction that a mistake has been made.

Neither do we find the board's determination to be arbitrary or capricious, *Hayes v. Yount,* 87 Wash. 2d 280, 552 P.2d 1038 (1976); *Stempel v. Department of Water Resources,* 82 Wash. 2d 109, 508 P.2d 166 (1973); *Petras v. Arizona State Liquor Board,* 129 Ariz. 449, 631 P.2d 1107 (Ariz. App. 1981); *Dolan v. Rust,* 195 Colo. 173, 576 P.2d 560 (1978), or an abuse of discretion, *Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw. App. 265, 630 P.2d 642 (1981); *Hawaii Automotive Retail Gasoline Dealers Assn., Inc. v. Brodie,* 2 Haw. App. 99, 626 P.2d 1173 (1981); *GLA Inc. v. Spengler,* 1 Haw. App. 647, 623 P.2d 1283 (1981).

Hawaii Revised Statutes (HRS) § 386-1 (1976) defines employee for workers' compensation purposes:

"Employee" means any individual in the employment of another person.

Where an employee is loaned or hired out to another person for the purpose of furthering the other person's trade, business, occupation, or profession, the employee shall, beginning with the time when the control of the employee is transferred to the other person and continuing until the control is returned to the original employer, be deemed to be the employee of the other person regardless of whether he is paid directly by the other

person or the original employer.

Under HRS § 386-1, a borrowed employee may be regarded as the employee of the borrowing employer for purposes of workers' compensation benefits notwithstanding the fact that the employee is paid by the original employer. *Yoshino, supra.* In determining whether a borrowing employer is a "special employer" of a "lent employee" for purposes of workers' compensation, the principal determinant used is control of the employee. Under the control test, it must be shown that the employee was loaned or hired out to the borrowing employer for the purpose of furthering the borrowing employer's trade, business, occupation, or profession and control of the employee was transferred to the borrowing employer. *Id.; Harter v. County of Hawaii,* 63 Haw. 374, 628 P.2d 629 (1981). Once these conditions are shown, the borrowing employer is considered a "special employer" of the "lent employee" and becomes liable for his workers' compensation benefits if the employee is injured.

Thompson clearly qualifies as the special employer of Danuser. Danuser was hired out to Thompson for the purpose of furthering Thompson's trade or business. Thompson was in the business of constructing a roadway and Danuser's efforts furthered that business. Hi-Way, on the other hand, was also in the construction business and normally rented out its equipment only during breaks in its operation. Arguably, Hi-Way benefitted from Danuser's work. However, the fact that labor-loan situations involve a benefit to the original employers' interest does not preclude a finding that the borrowing employers are special employers. *Harter v. County of Hawaii, supra.* Danuser was injured while performing the same work as Thompson's equipment operators on Thompson's project and was directly furthering the trade or business of Thompson.

It is also clear that Thompson controlled Danuser's work, as he was directly supervised by Thompson. Danuser reported daily to Thompson's supervisor for work instructions. The supervisor would inform him and all other Catscraper operators, including Thompson's own men, of the assignments for the day: where to pick up the dirt, where to dump it, and what routes to take. The assignments could be changed at any time and often were. Hi-Way provided no supervision over the operators lent to Thompson.

Thompson determined the days on which Danuser did or did

not work for whatever reasons, including inclement weather. Neither Danuser nor Hi-Way had any part in those decisions although Danuser's pay was to a large degree determined by those decisions.[1] Additionally, if Thompson felt Danuser's work was inadequate, he could be sent back to Hi-Way and another operator requested.

Furthermore, the record indicates that Danuser knowingly consented to the establishment of the employment relationship with Thompson. *Harter v. Hawaii County, supra.* Danuser willingly went to work for Thompson, submitted himself to Thompson's supervision and considered Thompson his "employer".

Thompson contends that the control exercised over Danuser was not so extensive as to satisfy the transfer of control requirement of the rule. Thompson argues that the rule requires a showing of detailed control over Danuser's actual operational performance. However, the mere lack of direction of Danuser's operation of the equipment is not a determinative fact in the question of transfer of control. In situations such as this, deference to the professional skills of the loaned employee is to be expected. *See Harter v. County of Hawaii, supra.* Certainly Thompson exercised no less control over Danuser than over its own equipment operators. Furthermore, Thompson's right to refuse to use Danuser is the ultimate extension of control over his job performance.

The assignment to Thompson was constant and for an extended period. This, as opposed to sporadic or short durational assignments, tends to support the finding of Thompson's control. *Kepa v. Hawaii Welding Co., Ltd.,* 56 Haw. 544, 545 P.2d 687 (1976).

The record contains substantial evidence that control over Danuser was transferred to Thompson at the time of the injury.

Affirmed.

*John A. Roney (Stubenberg & Roney* of counsel) for employer, insurance carrier-appellant.

*Jeffrey S. Portnoy (Kristin Brandsma* with him on the brief; *Cades, Schutte, Fleming & Wright* of counsel) for employer, insurance carrier-appellee.

---

[1] The record indicates that on some days when Thompson did not use him, he would report to Hi-Way's yard where, if any work was available, he might be employed.