## IN THE MATTER OF THE APPLICATION OF JAMES K. PAPA, SR., for Service-Connected Disability Retirement, Appellant, *v.* BOARD OF TRUSTEES, EMPLOYEES' RETIREMENT SYSTEM, STATE OF HAWAII, Appellees

NO. 7159

CIVIL NO. 49886

FEBRUARY 1, 1983

LUM, ACTING C.J., RETIRED JUSTICE MARUMOTO,
IN PLACE OF NAKAMURA, J., RECUSED,
AND RETIRED JUSTICES OGATA AND MENOR,
ASSIGNED TEMPORARILY*

---

\* Chief Justice Richardson, who heard oral argument in this case, retired from the court on December 30, 1982. HRS § 602-10 (1982 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* This is an appeal by James K. Papa, Sr., from a judgment of the circuit court affirming the denial by the Board of Trustees of the State Employees' Retirement System of his claim for service-connected total disability retirement benefits.

On July 12, 1968, the appellant, then a firefighter with the City and County of Honolulu Fire Department and a member of the Employees' Retirement System, injured his back while working on a fireboat. Several days later, he was admitted to Queen's Medical Center where Dr. Alan Pavel performed an operation on his back and excised a protruding disc at the L4-5 level. The appellant's condition improved and he returned to work in December, 1968.

In June of 1969, while he was at home, the appellant felt a low back pain which radiated down his right leg. He was again hospitalized and on August 29, 1969, Dr. Pavel performed a laminectomy and fused the L-5 vertebra to the S-1 vertebra to relieve the pain.

On March 16, 1970, the appellant applied for service-connected total disability retirement, claiming that he was permanently incapacitated for gainful employment as a result of the July 12, 1968 accident. This application was made pursuant to the provisions of HRS § 88-77 which in pertinent part provides:

> (a) Upon application of a member, or of the head of his department, any member who has been permanently incapacitated as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no willful negligence on his part, may be retired by the board of trustees for service-connected total disability provided that:
>
> .   .   .   .
>
> (4) The medical board certifies that the member *is incapacitated for gainful employment* and that his incapacity is likely to be permanent. . . . [Emphasis added]

Pursuant to the foregoing statutory provisions, the application was referred to a medical board comprised of three licensed physicians. The medical board examined the appellant

and found and certified that, as the natural and proximate result of the July accident, he was permanently incapacitated for the further performance of duty but recommended that he be granted *service-connected occupational disability retirement,* under HRS § 88-79, and not *service-connected total disability retirement,* under HRS § 88-77.

HRS § 88-79, in pertinent part, provides:

(a) Upon application of a member, or of the head of his department, any member who has been permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no willful negligence on his part, may be retired by the board of trustees for service-connected occupational disability provided that:

. . . .

(4) The medical board certifies that the member *is incapacitated for the further performance of duty,* that his incapacity is likely to be permanent. . . . [Emphasis added]

HRS § 88-79 is a 1963 amendment to the Employees' Retirement System Law. *See* Act 127, S.L.H. 1963. The legislature explained the amendment as follows:

Section 6 (adding a new section, designated as 6-46.1 [now HRS § 88-79]) would establish procedures for the application for, and determination of, retirement for service-connected occupational disability, a new category. For retirement system purposes "occupational disability" means permanent incapacity for the further performance of duty. This is designed to eliminate existing problems in granting full benefits for life when the applicant is incapacitated for the duties of his position. The Retirement System has experienced significant unanticipated costs under the present provisions. [1963 Senate Journal 845, Stand. Com. Rep. 497.]

The Board accepted the findings and certification of the medical record and granted the appellant occupational disability retirement, effective July 1, 1970.

The allowance for occupational disability retirement is a

monthly pension of two-thirds of the retiree's average final compensation for a period of three years. HRS § 88-80. Thereafter, it is reduced to one-third of the retiree's average final compensation *unless* the medical board, within this three-year period, finds and certifies that the retiree is "totally incapacitated for gainful employment." *Id.* In the latter event, the retiree continues to receive two-thirds of his average final compensation or the same allowance as that provided for service-connected total disability retirement by HRS § 88-78.

The medical board did examine the appellant within the period as provided by the statute but found that he was not totally incapacitated for gainful employment. On the basis of the medical board's findings, the Board of Trustees refused to award the appellant benefits equal to service-connected total disability retirement allowances. The circuit court affirmed the decision of the Board of Trustees and the present appeal followed.

To be eligible for service-connected total disability retirement, the medical board must certify that the claimant is likely to be permanently *"incapacitated for gainful employment."* HRS § 88-77(a)(4). (Emphasis added) The legislature has made this perfectly clear: "For retirement system purposes 'total disability' means permanent incapacity for gainful employment."[1] 1963 Senate Journal 845, Stand. Com. Rep. 497.

The Board has construed the phrase "gainful employment" to mean *substantial* gainful employment. We think this is a fair and reasonable interpretation. *See Aaron v. Fleming,* 168 F. Supp. 291 (D. Ala. 1958). Thus, where the claimant is permanently unable to engage in any substantial gainful employment which is commensurate with his education, training, experience, and physical and mental capacities, as a consequence of

---

[1] Compare HRS § 386-1 (Workers' Compensation Law) where "total disability" is defined to mean "disability of such an extent that the disabled employee has no reasonable prospect of finding regular employment of any kind in the normal labor market." See also Tsuchiyama v. Kahului Trucking & Storage, Inc., 2 Haw. App. 659, 638 P.2d 1381 (1982).

his having been injured while in the performance of his duties, he will be deemed to be totally disabled within the intendment of the statute.

In the present case, the Board found that the appellant could no longer be able to perform the physical work of a firefighter. Accordingly, it granted him *occupational disability* retirement benefits. The Board further found, however, that the appellant was still capable of performing substantial gainful work. Accordingly, it declined to award him *total disability* retirement benefits. The circuit court affirmed. In its findings of fact, the trial court wrote:

Appellant, in his present condition, is not permanently incapacitated for gainful employment. He is physically capable of performing lighter work than he performed as a firefighter.

Dr. Alan Pavel, Appellant's treating orthopedic physician from the time of his injury in 1968, indicated on two occasions that Appellant can do most light desk or paper work. Dr. Calvin Kam, a neurosurgeon who examined Appellant at the request of his former counsel, noted that "Mr. Papa can do some form of light duty." Dr. Herbert K. N. Luke, who examined the Appellant on November 8, 1973, stated that "based on the examination, he (Mr. Papa) appears to be capable of returning to some type of selected light work." Dr. Luke further stated: "The examination seems to indicate that he is not totally disabled permanently, but he is permanently partially disabled. It is my impression that this patient can return to work if he so wishes, but I gather from talking to him that he would prefer not doing so." Dr. Richard S. Dodge, an orthopedic surgeon and a member of the Medical Board which examined Appellant for the three-year evaluation, testified at the hearing before the hearing officer below that Appellant can do work that does not require heavy lifting and prolonged periods of sitting or standing and that Appellant is able, for example, to work as a security guard or a parking lot attendant.

A review of the record fails to convince us that the findings of both the Board and of the trial court were clearly erroneous.

Neither are we left with a firm and definite conviction that a mistake has been made. *De Victoria v. H&K Contractors,* 56 Haw. 552, 545 P.2d 692 (1976).

Affirmed.[2]

*Alvin T. Shim (Shim, Sigal, Tam & Naito,* of counsel) for appellant.

*Aurelio T. Arnobit, Jr.,* Deputy Attorney General, for appellees.

---

[2] Following oral argument, this court addressed the following question to the parties:

When application has been made only for service-connected total disability retirement and the applicant has been denied total disability retirement but granted service-connected occupational disability retirement, may the applicant then apply for ordinary service retirement as of the date he filed for total disability retirement. In addressing this issue, consider the effect, if any, of the statutory provision regarding "Election of mode of retirement allowance," enacted with the other relevant provisions of Act 110, 1969 SLH 94, 107, 109-10, 112 (current versions at HRS §§ 88-73 to -74, -77 to -80, -83 (1976 & Supp. 1980).

After reviewing the supplemental briefs filed by the parties, and addressing the issue in the factual circumstances of this case, we now answer the question posed above in the negative.