ERNEST T. FELICIANO, Appellant-Appellee, *v.* THE BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM, STATE OF HAWAII, Appellee-Appellant.

NO. 8606

(CIVIL NO. 65712)

FEBRUARY 22, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

The Board of Trustees of the Employees' Retirement System, State of Hawaii (Board), appeals from an order of the circuit court reversing a decision of the Board and ordering the Board to enter a decision accepting and affirming the Board's hearings officer's recommended findings of fact, conclusions of law, decision and order. The Board contends on appeal that the circuit court (1) was clearly erroneous in reversing the Board's decision, (2) erred as a matter of law in its interpretation of the phrase "incapacitated for gainful employment," Hawaii Revised Statutes (HRS) § 88-77 (1976), and (3) erred in ordering the Board to enter and affirm the recommended findings of fact, conclusions of law, decision and order of the Board's hearings officer and award a service-connected total disability retirement to the claimant, Ernest T. Feliciano (Feliciano).

We agree with the Board with respect to (1) and (3). With respect to (2), we find the interpretation of the court was correct, but the interpretation is not determinative of this appeal.

Feliciano was employed by the state Department of Transportation as a tractor operator. On January 14, 1974, he was involved in a non-service-connected auto accident and was hospitalized with a concussion, and chest and knee injuries. X-rays were taken of Feliciano's cervical spine but no injury was indicated. On May 16, 1974, Feliciano was at work cleaning a drainage ditch in Nuuanu Valley when he slipped and fell on his back. On July 29, 1974, Feliciano consulted Dr. M. McCarthy regarding back pains. He was referred to Dr. Richard Simmons who treated him for pains in his arm, leg, back and neck. Feliciano was later referred to Dr. Maurice Nicholson and, on September 18, 1974, underwent an excision of the lumbar L4-5 disc, followed a week later by an anterior cervical fusion. Dr. Nicholson diagnosed Feliciano's condition as degenerated discs, cervical C5-6, and lumbar L4-5. Feliciano did not notify his supervisor of the May 1974 fall and injury until May 27, 1975.

On September 3, 1975, Feliciano filed a workers' compensation claim. The State disputed the claim, arguing that the injury was caused by the January 1974 car accident and not Feliciano's fall in May 1974. On September 15, 1976, the workers' compensation claim was denied by the Department of Labor and Industrial Relations. Feliciano appealed to the Labor and Industrial Relations Appeals Board (LIRAB) and on November 28, 1978, LIRAB reversed the Department's ruling holding that the back injury was work related and compensable under the workers' compensation statute (HRS, chapter 386).

On June 28, 1976, Feliciano filed for a service-connected total disability retirement from the State Employees' Retirement System (ERS) pursuant to HRS § 88-77 (1976).[1] The Board transmitted the application along with medical and

---

[1] Hawaii Revised Statutes § 88-77 reads as follows:
Service-connected total disability retirement.
(a) Upon application of a member, or of the head of his department, any member who has been permanently incapacitated as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard,

other reports to the medical board[2] of the ERS for review and evaluation. The medical board found that the injuries were not the result of the May 16, 1974 fall, and that Feliciano was not totally disabled. Therefore, the medical board recommended denial of disability retirement.

On October 5, 1977, Feliciano appealed the medical board's decision pursuant to the Board's rules, and the Board designated Kenneth Saruwatari, Esq., as hearings officer for

---

through no willful negligence on his part, may be retired by the board of trustees for service-connected total disability provided that:

(1) In the case of an accident occurring after July 1, 1963, the employer shall file with the board a copy of the employer's report of the accident submitted to the bureau of workers' compensation;

(2) An application for retirement is filed with the board within two years of the date of the accident or the date upon which workers' compensation benefits cease, whichever is later;

(3) Certification is made by the head of the agency in which the member is employed, stating the time, place and conditions of the service performed by the member resulting in his disability and that the disability was not the result of willful negligence on the part of the member;

(4) The medical board certifies that the member is incapacitated for gainful employment and that his incapacity is likely to be permanent.

\* \* \* \* \*

(d) The board shall have the power to determine whether or not the disability is the result of an accident occurring while in the actual performance of duty at some definite time and place and that the disability was not the result of willful negligence on the part of the member. The board may accept as conclusive:

(1) The certification made by the head of the agency in which the member is employed; or

(2) A finding to this effect by the medical board.

[2] The medical board is authorized by Hawaii Revised Statutes § 88-31 (1976), which reads as follows:

Medical board. The board of trustees shall designate a medical board to be composed of three physicians not eligible to participate in the system. If required, other physicians may be employed to report on special cases. The medical board shall arrange for and pass upon all medical examinations required under this part, shall investigate all essential statements and certificates by or on behalf of a member in connection with application for disability retirement, and shall report in writing to the board its conclusions and recommendations upon all the matters referred to it.

the appeal.[3] A hearing was held on December 20, 1979 and, on October 10, 1980, the hearings officer submitted his recommended findings of fact, conclusions of law, decision and order. He found that the injury was service-connected, that Feliciano was totally disabled, and recommended that Feliciano be granted service-connected total disability retirement.

The Board thereafter considered all of the evidence in the record, in addition to the findings of both the medical board and the hearings officer and on November 12, 1980, issued its own proposed decision denying the application. Feliciano filed exceptions to the proposed findings and the Board heard arguments on April 13, 1981. On May 4, 1981, the Board entered its final decision, denying Feliciano's application.

In its Findings of Fact, the Board found:

3. Applicant in his present condition, is incapacitated for the further performance of duty.

4. However, the total credible evidence submitted does not indicate that Applicant, in his present condition, is permanently incapacitated for gainful employment. He is physically capable of performing lighter forms of work than he performed as a tractor operator.

5. Further, the total credible evidence submitted does not establish that Applicant's present incapacity for the further performance of duty was the natural and proximate result of the May 16, 1974 accident.

The Board concluded that Feliciano had not met the burden of establishing "the requisite degree of incapacity and causation."

Feliciano timely appealed to the circuit court for review. HRS § 91-14 (1981 Supp.). After argument, the court entered its order on January 11, 1982, reversing the Board's decision and ordering the Board to accept the hearings officer's recommended decision to grant Feliciano service-connected total disability retirement. The order was signed by Honorable

---

[3] The Board has the authority to appoint a hearings officer pursuant to HRS § 92-16 (1976). The function of the hearings officer is to receive testimony and evidence and then make recommendations which the Board may adopt or reject in whole or in part.

James H. Wakatsuki, Judge, on behalf of Honorable Toshimi Sodetani, Judge, who had heard the argument and rendered an oral decision.

Judicial review of decisions of administrative agencies is governed by HRS § 91-14(g) (1976).[4] *Foodland Super Market, Ltd. v. Agsalud,* 3 Haw. App. 569, 656 P.2d 100 (1982); *Danuser v. J. A. Thompson and Son, Inc.,* 3 Haw. App. 564, 655 P.2d 887 (1982); *Homes Consultant Co., Inc. v. Agsalud,* 2 Haw. App. 421, 633 P.2d 564 (1981).

Under § 91-14(g)(5), a reviewing court may not set aside the findings of an administrative agency except where they are clearly erroneous in that they are not supported by substantial evidence in the record, or where the court is left with the definite and firm conviction that a mistake has been made in view of the reliable, probative, and substantial evidence in the whole record. *DeFries v. Association of Owners, 999 Wilder,* 57 Haw. 296, 555 P.2d 855 (1976); *De Victoria v. H & K Contractors,* 56 Haw. 552, 545 P.2d 692 (1976); *Foodland Super Market, Ltd. v. Agsalud, supra; Danuser v. J. A. Thompson and Son, Inc., supra; Homes Consultant Co., Inc. v. Agsalud, supra.*

Review of the circuit court's decision by this court is governed by HRS § 91-15 (1981 Supp.) and Rule 52(a), Hawaii Rules of Civil Procedure (HRCP) (1972, as amended). *Food-*

---

[4] Hawaii Revised Statutes § 91-14(g) (1976) provides:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*land Super Market, Ltd. v. Agsalud, supra; Homes Consultant Co., Inc. v. Agsalud, supra.*

Our examination of the record indicates that the Board's findings of fact that Feliciano's injury was not service-connected and that he was not incapacitated for gainful employment were supported by reliable, probative and substantial evidence and, therefore, that the circuit court erred in finding that the Board "erred in its conclusion."

The evidence shows that the May 1974 incident followed closely upon the January 1974 automobile accident. The evidence further shows that x-rays were not taken of Feliciano's lumbar spine after the January 1974 accident. The inference, of course, is that the lumbar disc could have been injured at that time. At the hearing before the hearings officer, Dr. Raymond Yap, a member of the medical board, testified that it was almost impossible for Feliciano's May 1974 fall to have produced a herniated disc or, if it did, the injury would have manifested itself immediately or within a few days of the accident. However, it did not show up until several months later. Furthermore, Dr. Yap testified that the medical board had "medical clues" indicating that Feliciano had degenerated lumbar discs prior to the May 16, 1974 accident and that such conditions worsen with time.

With regard to Feliciano's incapacity for gainful employment, Dr. Nicholson, Feliciano's treating surgeon, stated in his statement accompanying Feliciano's application that Feliciano was permanently incapacitated from doing heavy work, but that he should be able to perform light work. Dr. Nicholson noted Feliciano's lack of education as an employment problem. The hearings officer admitted in evidence a subsequent letter from Dr. Nicholson, in which he indicated that Feliciano's back motion was restricted to 75% of normal. Dr. Nicholson also stated in the letter, "It is hoped that in the future Mr. Feliciano will be able to get back to some light type of work. . . ." Feliciano was also examined by Dr. David Y. Kimura, an orthopedic consultant for the medical board. Dr. Kimura reported that Feliciano is totally disabled from his usual type of occupation. However, "[Feliciano] is not totally disabled from doing all types of work and could probably do clerical or supervisory type work, although it is understood

that he does not have this training." Dr. Yap testified that Feliciano could perform all the normal daily functions of a fully functioning person: he could drive a car, climb stairs, walk, water and transplant plants, cook and do several other things a totally incapacitated patient would be unable to do. Feliciano also testified before the hearings officer as to his education.

The Board also contends that the court erred in its conclusion that a determination of "incapacitated for gainful employment" does not mean complete and absolute inability to perform any work. The circuit court concluded:

That total disability or totally incapacitated for gainful employment does not mean complete and absolute inability to perform any work. An injured worker who is able to perform limited kinds of work in quality or quantity may well be totally incapacitated under the law.

And in making such a determination, the individual's training and work experience, education, mental capacity, and age, together with his physical ability or disability must be considered.

Furthermore, such facts must be examined in the light of labor market condition. If the market place is unable to offer the injured individual substantial job opportunities, he must be deemed incapacitated for gainful employment.

Our supreme court recently held that, with the exception of the labor market, the factors mentioned by the lower court here are proper considerations in determining whether an applicant is totally disabled within the meaning of the statute. *Papa* v. *Board of Trustees,* 66 Haw. ___, 657 P.2d 1027 (1983). A close reading of that decision indicates that those factors determine whether the Board may be justified in denying total disability and awarding occupational disability retirement.[5] In *Papa,* the court held that the Board was correct in denying total disability

---

[5] Hawaii Revised Statutes § 88-79 (1976) provides for "service-connected occupational disability" in instances where an on-the-job injury causes incapacity for further performance of duty.

and awarding occupational disability on the basis of the evidence.

However, neither *Papa* nor the circuit court's correct interpretation is helpful to Feliciano. Although the evidence presented with respect to Feliciano's incapacity could have supported an award of occupational disability retirement, the Board also determined that Feliciano's injury was not service-connected and thus, he was not eligible for any kind of service-connected retirement.

Finally, the Board argues that the court erred in ordering the Board to affirm the recommendations of the hearings officer. The Board asserts that the hearings officer's recommendations were based on the LIRAB decision that Feliciano's injuries were service-connected under the state workers' compensation law,[6] and the court's ruling makes the LIRAB decision on causation binding on the Board. The Board maintains that that result is erroneous because the burden of proof under the workers' compensation law is different from that for the disability retirement program. We agree.

The workers' compensation statute creates a presumption that a claim thereunder is for a covered work injury. HRS § 386-85 (1976).[7] There is no comparable presumption in the retirement system statutes and the two statutory programs are entirely separate. We perceive no legislative intent in the language of the workers' compensation law to make the presumption applicable anywhere else in the law. Likewise, we find no legislative intent in the Employees' Retirement System Law to have the findings of the LIRAB binding on the Board.

---

[6] The actual findings of fact and conclusions of law of the hearings officer do not embody the finding that the LIRAB decision on causation is binding on the Board. However, careful review of the discussion section of the hearings officer's recommendations indicates that the hearings officer relied upon the LIRAB decision in resolving the issue of causation.

[7] Our supreme court has ruled that that presumption places a heavy burden on the employer of going forward with the evidence and of ultimate persuasion. *Lawhead v. United Airlines,* 59 Haw. 551, 584 P.2d 119 (1978); *DeFries v. Association of Owners, 999 Wilder,* 57 Haw. 296, 555 P.2d 855 (1976).

Furthermore, the court misconstrued the function and effect of the hearings officer's recommendations. The recommendations were merely to provide guidance to the Board but the Board was not bound by those findings or the recommendations. In the instant case, after reviewing the entire record, the Board chose to reject those recommendations and made its own findings and conclusions based on the same evidence. The issue before the court was whether the Board's decision was "clearly erroneous," not whether the hearings officer's recommendations were more correct.

Reversed.

*Harriet Yoshida Lewis,* Deputy Attorney General, for appellee-appellant.

*Raymond Lee* for appellant-appellee.