967 P.2d 662

**Peter FRANK, Plaintiff–Appellant,**

v.

**HAWAII PLANING MILL FOUNDATION, et al., Defendants-Appellees,**

and

**HAWAII PLANING MILL FOUNDATION and Hawaii Planing Mill, Ltd., Defendants and Third–Party Plaintiffs–Appellees,**

v.

**HM BLACK, INC. dba Express Employment, Third–Party Defendant–Appellee.**

**No. 20343.**

Intermediate Court of Appeals of Hawai'i.

May 29, 1998.

Certiorari Granted July 2, 1998.

---

Arthur Y. Park, Laurent J. Remillard, Jr., and John C. McLaren (Park Kim Yu & Remillard, of counsel) on the briefs, Honolulu, for plaintiff-appellant.

Dean E. Ochiai, on the brief, Honolulu, for defendants ànd third-party plaintiffs-appellees.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

WATANABE, Judge.

In this appeal, we have been asked to determine whether an employee of a temporary employment agency is precluded by Hawai'i Revised Statutes (HRS) § 386–5 (1993),[1] the exclusive remedy provision of the Hawai'i Workers' Compensation Law, from bringing a negligence action against a customer of the agency for injuries sustained while the employee was assigned to and working on the premises of the customer. The Third Circuit Court (circuit court) concluded that the employee was so barred and accordingly, granted partial summary judgment as to this issue.

We reverse the order granting partial summary judgment, vacate the judgment below, and remand for further proceedings consistent with this opinion.

## BACKGROUND

The facts underlying this case appear to be undisputed. Plaintiff-Appellant Peter Frank (Frank) was an employee of Third-Party Defendant-Appellee HM Black, Inc., dba Express Employment (Express), a company that leased its employees on an "as-needed" basis to various businesses in Hawai'i County. In an advertising brochure, Express represented that it provided "quality temporary personnel" who were "screened, tested and referenced[.]" Express also advertised:

*No hidden costs or contracts*

We cover all payroll related extras including: Work Compensation, TDI, FICA, Health and Unemployment insurance.

*We do the paperwork*

Handle claims and reporting, saving you time and money.

1. Hawai'i Revised Statutes (HRS) § 386–5 (1993) states in relevant part:

The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury....

*Insured!*

Express employees are covered by 1 Million per occurence [sic] for liability and $100,000 for employer's liability.

Sometime prior to July 19, 1993, Defendants–Appellees Hawaii Planing Mill Foundation and/or Hawaii Planing Mill, Ltd. (collectively, HPM Defendants) apparently entered into a contract with Express,[2] whereby Express agreed to provide HPM Defendants with additional workers for HPM Defendants' mill operations in exchange for a fee to "cover [Express's] expenses, including all applicable wages; all applicable federal, social security and state taxes; all applicable worker's [sic] compensation premiums; all other benefits required by law; and [Express's] profit." Pursuant to the contract, Express assigned Frank to work for HPM Defendants at their mill. However, HPM Defendants remained free to "accept or reject" Frank. Furthermore, while Frank worked for HPM Defendants, he was under the direction and control of HPM Defendants' supervisory staff and used HPM Defendants' equipment to perform his job-related functions. That is, HPM Defendants had "the power and authority to dictate the time and place [of Frank's work]; work rules; manner of work; quality; and all other aspects of [Frank's] performance at [HPM Defendants' mill]."

On July 19, 1993, Frank permanently injured his right hand while operating a radial saw at HPM Defendants' mill. After sustaining his injury, Frank, pursuant to HRS chapter 386,[3] filed a claim for workers' compensation benefits through Express. After reviewing Frank's case, the workers' compensation insurance carrier for Express approved the claim and awarded workers' compensation benefits to Frank.

**PROCEEDINGS BELOW**

On July 12, 1995, Frank filed the underlying complaint against HPM Defendants, alleging that HPM Defendants' negligence had resulted in the injuries Frank sustained at HPM Defendants' mill. On August 29, 1995, HPM Defendants answered the complaint and filed a third-party complaint against Express, seeking defense, contribution, and indemnification against any and all claims by Frank. In answering the third-party complaint, Express raised numerous defenses, among which was that the third-party claim was barred by HRS § 386–5.

On June 7, 1996, HPM Defendants filed a motion for partial summary judgment, claiming that pursuant to HRS § 386–5 (1993), Frank's exclusive remedy was for the workers' compensation benefits he had already received through Express's insurance carrier. HPM Defendants argued that because they controlled Frank's work performance and paid for Frank's workers' compensation insurance coverage through their agreement with Express, they were also Frank's employer for workers' compensation purposes and were thus entitled to the immunity afforded by HRS § 386–5.

On June 24, 1996, Frank filed his memorandum in opposition to HPM Defendants' motion for partial summary judgment, asserting that (1) the court lacked jurisdiction to determine the workers' compensation issues raised by the motion because, pursuant to HRS § 386–73 (1993),[4] original jurisdiction to decide such issues rested with the state director of labor and industrial relations (labor director); and (2) in the alternative, HPM Defendants did not satisfy the statutory requirements to be considered Frank's "employer" under HRS chapter 386 and thus,

---

**2.** The record on appeal does not contain a copy of any written contract between Defendant–Appellee Hawaii Planing Mill Foundation (HPM) and Third–Party Defendant–Appellee HM Black, Inc., dba Express Employment (Express). However, Plaintiff–Appellant Peter Frank has not disputed that a contract between HPM and Express was entered into and that the terms of the contract were as represented by HPM in affidavits attached to HPM's motion for partial summary judgment.

**3.** HRS chapter 386 is the codification of Hawai'i's Workers' Compensation Law.

**4.** HRS § 386–73 (1993) states in relevant part:

Unless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter. . . .

did not qualify for immunity from suit under HRS § 386–5.

On August 5, 1996, the court issued its order granting HPM Defendants' motion for partial summary judgment. In its order, the court entered the following Findings of Fact and Conclusions of Law:

A trial court has the jurisdiction to rule on defenses based upon HRS § 386–5 in tort actions. See e.g.: *Evanson v. University of Hawaii*, 52 Haw. 595 [483 P.2d 187] (1971); *Kamali v. Hawaiian Electric Light Co.*, 54 Haw. 153 [504 P.2d 861] (1972).

[HPM] Defendants were the borrowing employer of [Frank] in a borrowed employee context, with [Express] being the lending employer.

Under the plain language of HRS § 386–1, in a borrowed employee context, the borrowing employer is considered to be the employer of the employee. However, if the borrowing employer does not secure compensation to the employee as provided for in HRS § 386–121, then the lending employer is considered to be the employer.

One means for fulfilling the requirement of securing compensation to the employee is for the borrowing employer to directly provide workers' compensation coverage on behalf of the employee. However, [HPM] Defendants have not provided materials which indicate that they directly provided workers' compensation coverage for [Frank].

On the other hand, consistent with *Ghersi v. Salazar*, 883 P.2d 1352 (S.Ct.Utah 1994), the requirement may be met by [HPM] Defendants' payment to the lending employer of a fee, a portion of which was used to pay for workers' compensation coverage for [Frank]. This conclusion is based upon at least the following:

1) As a practical matter, [HPM] Defendants have met the requirements of securing compensation to [Frank] by indirectly purchasing workers' compensation coverage through the lending employer, [Express].

2) If an employee is allowed to sue in tort, the borrowing employer in a temporary labor services context, the employee would have more rights than ordinarily received in a typical employer-employee relationship.

Ordinarily, an employee is allowed workers' compensation benefits, but is not allowed to sue the employer in tort. However, in a temporary labor services context, if the employee can sue the borrowing employer in tort, the employee would be able to both receive workers' compensation benefits from the lending employer and sue the borrowing employer.

Further, in the temporary labor services context, if the employee suffers a work-related injury, it is most likely that the injury would be one suffered while engaged in services provided to the borrowing employer rather than the lending employer.

Simply put, if the lending employer were a temporary labor services provider, the employee a carpenter and the borrowing employer a general building contractor, an employee would most likely suffer a work-related injury on a job site performing construction work for the borrowing employer. It is less likely that the employee would suffer a work-related injury while filling out paper work at the lending employer's office.

This being the case, if an employee can sue a borrowing employer in tort in a temporary labor services context, then, in most instances of work-related injury, the employee would be able to both receive workers' compensation benefits from and sue in tort the employers. Again, this is more than what is contemplated in the ordinary employer-employee relationship.

3) *Fonseca v. Pacific Construction Co.*, 54 Haw. 578 [513 P.2d 156] (1973) is distinguishable for at least the following reasons: (a) there[,] the general contractor's liability was considered to be contingent and secondary while in this case the borrowing employer's liability is primary; (b) by contract, [Express] assumed whatever obligation [HPM]

Defendants had to provide workers' compensation coverage for [Frank], and (c) there were significant indicia of an employer-employee relationship between [Frank] and [HPM] Defendants.

On September 11, 1996, Frank filed a motion for relief from judgment or to alter judgment, which the court denied on October 15, 1996. After all remaining claims between the parties were dismissed by stipulation, final judgment was entered on December 2, 1996. This timely appeal followed.

## DISCUSSION

I. *Whether the Circuit Court Had Subject Matter Jurisdiction Over Frank's Claim.*

■ Frank initially contends that the circuit court lacked subject matter jurisdiction to decide HPM Defendants' motion for partial summary judgment because pursuant to HRS § 386–73 (1993), exclusive original jurisdiction to decide disputes over workers' compensation issues is vested in the labor director. HRS § 386–73 states in relevant part:

**Original jurisdiction over controversies.** Unless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter.

■ The question of whether a court has jurisdiction over a case is a question of law which we review under the right/wrong standard. *State v. Ontiveros*, 82 Hawai'i 446, 448, 923 P.2d 388, 390 (1996). We conclude that the circuit court correctly determined that it had subject matter jurisdiction to decide HPM Defendants' motion for partial summary judgment.

HRS § 386–8 (1993) provides in relevant part:

**Liability of third person.** When a work injury for which compensation is payable under this chapter has been sustained under circumstances creating in some person other than the employer or another employee of the employer acting in the course of his [or her] employment a legal liability to pay damages on account thereof, the injured employee ... may claim

compensation under this chapter *and recover damages from such third person.*

(Emphasis added.)

HRS § 603–21.5 (1993) states in relevant part:

The several circuit courts shall have jurisdiction, except as otherwise expressly provided by statute, of:

\* \* \*

(3) Civil actions and proceedings[.]

Thus, while the labor director has original jurisdiction over all controversies and disputes that arise under HRS chapter 386, the purview of chapter 386 does not extend to all injuries sustained in the course of one's employment. As stated in HRS § 386–8, a common-law tort cause of action against a third-party tortfeasor is reserved for an injured party, even when the injured party is eligible for compensation under chapter 386. *See Hun v. Center Properties*, 63 Haw. 273, 278, 626 P.2d 182, 186 (1981) (holding that HRS § 386–8 preserves the right of action, in common law or under statute, that an injured party may have against a third-party tortfeasor).

In this case, Frank's complaint alleged a common-law tort action and nothing else. Nowhere in the complaint was there any mention of a claim for workers' compensation benefits or any other claim over which the circuit court could not properly assume original jurisdiction. Because HRS § 603–21.5 grants jurisdiction to the "several circuit courts" over "civil actions and proceedings" unless "otherwise expressly provided by statute[,]" the circuit court properly assumed subject matter jurisdiction over Frank's case.

Frank argues, however, that the circuit court was divested of subject matter jurisdiction when HPM Defendants moved for partial summary judgment on grounds of HRS § 386–5 immunity. According to Frank, the labor director should have decided the partial summary judgment motion. Frank's argument is without merit.

The fact that HPM Defendants asserted a defense under chapter 386 did not divest the

circuit court of subject matter jurisdiction. Frank's claim was a third-party common-law tort claim, a claim over which the labor director lacks jurisdiction to hear. Thus, the proper, and only, forum for this case was in the circuit court. *See Evanson v. University of Hawaii*, 52 Haw. 595, 483 P.2d 187 (1971); *Kamali v. Hawaiian Elec. Co.*, 54 Haw. 153, 504 P.2d 861 (1972).

## II. *Whether the Circuit Court Erred in Granting Partial Summary Judgment in Favor of HPM Defendants.*

### A. *Standard of Review*

■ Frank asserts that the circuit court erred in granting HPM Defendants' motion for partial summary judgment. On appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.

*Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 286, 291, 944 P.2d 83, 88 (App.1997).

■ Although the question of a person's employment status for determining workers' compensation liability issues is generally a question of fact, *Blacknall v. Westwood Corp.*, 89 Or.App. 145, 747 P.2d 412, 414 (1987), where there is no dispute as to the facts surrounding the arrangement between two parties, and the parties merely disagree about the legal consequences of the agreed facts, the question of whether an employer-employee relationship between the parties exists for workers' compensation purposes is a question of law, *id.*, appropriate for summary judgment determination.

■ Additionally, the proper interpretation of a statute is a question of law, which we review *de novo*. *Hough v. Pacific Ins.*

*Co.*, 83 Hawai'i 457, 462, 927 P.2d 858, 863 (1996). In construing a statute,

> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. Where the language of a statute is unambiguous, our only duty is to give effect to the statute's plain and obvious meaning. Further, in interpreting a statute, we give the words their common meaning, unless there is something in the statute requiring a different meaning.

*Id.* at 463, 927 P.2d at 864 (quoting *Iddings v. Mee–Lee*, 82 Hawai'i 1, 6–7, 919 P.2d 263, 268–69 (1996)).

### B. *The General Common Law Rule*

In borrowed (also referred to as "lent") employee cases involving a general (also referred to as "lending" or "original") employer in the business of supplying temporary help, the vast majority of jurisdictions hold that if the borrowing (also referred to as "special") employer has paid the lending employer a fee, part of which was used to provide workers' compensation insurance for the lent employee, the special employer is immune from a negligence action brought by the lent employee for injuries sustained while working for the special employer. *See, e.g., Maynard v. Kenova Chem. Co.*, 626 F.2d 359 (4th Cir.1980); *Beaver v. Jacuzzi Bros., Inc.*, 454 F.2d 284 (8th Cir.1972); *St. Claire v. Minnesota Harbor Serv., Inc.*, 211 F.Supp. 521 (D.Minn.1962); *Simmons v. Atlas Vac Mach. Co.*, 493 F.Supp. 1082 (E.D.Wis.1980); *Terry v. Read Steel Prods.*, 430 So.2d 862 (Ala. 1983); *Rumsey v. Eastern Distribution, Inc.*, 445 So.2d 1085 (Fla.Dist.Ct.App.1984); *Fox v. Contract Beverage Packers, Inc.*, 398 N.E.2d 709 (Ind.Ct.App.1980); *Whitehead v. Safway Steel Prods.*, 304 Md. 67, 497 A.2d 803 (1985); *Danek v. Meldrum Mfg. & Eng'g Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977); *Wright v. Habco, Inc.*, 419 S.W.2d 34 (Mo. 1967); *Antheunisse v. Tiffany & Co.*, 229 N.J.Super. 399, 551 A.2d 1006 (1988); *Campbell v. Central Terminal Warehouse*, 56 Ohio St.2d 173, 383 N.E.2d 135 (1978); *Blacknall v. Westwood Corp.*, 89 Or.App. 145, 747 P.2d 412 (1987); *English v. Lehigh County Au-*

*thority,* 286 Pa.Super. 312, 428 A.2d 1343 (1981); *Marshall v. Toys–R–Us Nytex, Inc.,* 825 S.W.2d 193 (Tex.Ct.App.1992); *Ghersi v. Salazar,* 883 P.2d 1352 (Utah 1994).

Illustrative of the foregoing cases is *Ghersi v. Salazar,* a case decided by the Supreme Court of Utah on facts very similar to the case presented here and upon which the circuit court relied in rendering its decision below. In *Ghersi,* Adia Personnel Services, Inc. (Adia), a temporary labor service, contracted with Huish Detergent, Inc. (Huish) to provide Huish with temporary employees. *Id.* at 1354. Huish paid Adia an hourly fee for each temporary employee, and Adia paid the employees at a lower rate. *Id.* Pursuant to an agreement between Adia and Huish, Adia carried workers' compensation insurance on all temporary employees provided to Huish. *Id.* The difference between the rate Huish paid Adia and the rate Adia paid to the temporary employees included an allowance for workers' compensation premiums. *Id.*

The plaintiff, Dante Ghersi (Ghersi) obtained employment with Adia in April 1989. In the ensuing months, Adia placed Ghersi with several different companies. However, Ghersi could accept or reject any assignment given to him by Adia. *Id.* In late April or early May 1989, Ghersi accepted an assignment from Adia to work at Huish's warehouse, where he was under the supervision and control of Huish employees, who told him when, where, and how to work. While working for Huish, Ghersi sustained injuries when a Huish employee, Joe Salazar (Salazar), backed over Ghersi's foot with a forklift. *Id.* After receiving workers' compensation benefits through Adia's workers' compensation insurer, Ghersi filed suit against both Salazar and Huish for injuries arising out of Salazar's negligent operation of the forklift. *Id.* The district court which presided over the case granted the motions of both Salazar and Huish for summary judgment, holding that they were immune from a common-law tort suit because Ghersi's sole remedy against them was under Utah's Workers' Compensation Act. *Id.* Ghersi appealed.

The Utah Supreme Court affirmed, concluding that Ghersi was an employee of both Adia and Huish for purposes of the workers' compensation act. The supreme court rejected the argument that Ghersi's relationship with Huish was similar to that between the subcontractor and subcontractor's employee in *Pate v. Marathon Steel Co.,* 777 P.2d 428, 431 (Utah 1989), where the Utah Supreme Court had ruled that a subcontractor's employee who had received workers' compensation benefits through the subcontractor's insurer was not precluded under the workers' compensation act from bringing a negligence action against the general contractor of the subcontractor. The supreme court reasoned:

> A temporary labor service is not like a subcontractor. Such a service does not perform any work for customers; it merely supplies or "loans" workers who are under contract to the service to work as an employee for a client. The work the employee performs is the work of the client. The relationships between a labor service, a "loaned" or temporary employee, and a temporary employer are different from statutory employer-employee relationships and different legal principles govern that relationship.
>
> Almost without exception, courts have relied on the loaned employee doctrine to hold that the special employer of a temporary employee is an employer for workers' compensation purposes. The doctrine provides that if a labor service loans an employee to a special employer for the performance of work, then the employee, with respect to that work, is the employee of the special employer for whom the work or service is performed.
>
> The loaned employee doctrine has evolved to determine the rights and responsibilities of the parties under workers' compensation laws. Special terminology has been developed to describe the parties to this relationship. A temporary labor service is a "general employer"; a temporary employee is a "loaned" employee; and the business to which the employee is assigned is a "special employer." Here, Adia is a general employer, Ghersi the loaned employee, and Huish the special employer.

Professor Larson explains workers' compensation liability under the loaned employee doctrine as follows:

When a general employer lends an employee to a special employer, the special employer becomes liable for work[ers]' compensation only if:

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for work[ers'] compensation.

*Ghersi* at 1356–57 (citations omitted).

After applying the foregoing test to the facts of the case, the Utah Supreme Court concluded that Huish was Ghersi's special employer. *Id.* at 1357. The supreme court then turned its attention to whether Huish, having paid a fee to Adia that included workers' compensation coverage for Ghersi, had provided workers' compensation benefits to Ghersi so as to qualify for immunity from Ghersi's tort suit. Concluding that Huish was immune, the supreme court reasoned:

Given the economic realities of employee leasing, we hold that the substance of the requirement is met. Huish paid an hourly fee to Adia with the understanding that a portion of the fee would be used to purchase workers' compensation insurance for the temporary employees. The agreement between Adia and Huish required Adia to carry workers' compensation insurance on all temporary employees placed with Huish. Huish, through its contract with Adia, provided workers compensation benefits. *Since both Adia and Huish could be liable under [Utah's Workers' Compensation Act] both are protected by it when they comply therewith.* Because Huish was a special employer and paid workers' compensation, Huish cannot be sued by Ghersi for damages.

*Id.* at 1358 (emphasis added; citations omitted).

HPM Defendants urge us to adopt the majority rule, as the circuit court did, and conclude that (1) they were Frank's special employer for workers' compensation purposes, and (2) they were immune from a negligence lawsuit brought by Frank for injuries sustained while working for HPM Defendants. In light of Hawai'i's unique statutory workers' compensation scheme, however, we are unable to do so.

### C. The Hawai'i Statutory Scheme

As Professor Larson observes in his well-known treatise on workers' compensation law, Hawai'i is one of only seven states that have, by statute, codified or varied the "usual decisional doctrines" in borrowed employee workers' compensation cases. 3 A. Larson & L. Larson, *Larson's Workers' Compensation Law,* § 48.18, at 8–479—8–483 (1997). Specifically, HRS § 386–1 (1993) provides, in relevant part, as follows:

Where an employee is loaned or hired out to another person for the purpose of furthering the other person's trade, business, occupation, or profession, the employee shall, beginning with the time when the control of the employee is transferred to the other person and continuing until the control of the employee is returned to the original employer, be deemed to be the employee of the other person regardless of whether the employee is paid directly by the other person or by the original employer. The employee shall be deemed to remain in the sole employment of the original employer if the other person fails to secure compensation to the employee as provided in section 386–121.

The foregoing provision was enacted as part of a 1963 recodification of Hawai'i's workers' compensation laws based, in large measure, on the recommendations of Professor Stefan A. Riesenfeld, a well-respected authority on workers' compensation law, contained in Legislative Reference Bureau Report No. 1, 1963, entitled, *Study of the Workmen's Compensation Law in Hawaii (LRB Study).* In the LRB Study, Professor Riesenfeld had recommended the enactment of the following general provision regarding employees:

"Employee" means any individual in the employment of another person except where such employment is solely for personal, family or household purposes.

Where an employee is loaned or hired out to another person for the purpose of furthering such other person's trade, business, occupation, or profession, the employee shall, beginning with the time when the control of the employee is transferred to such other person and continuing until such control is returned to the original employer, be deemed to be the employee of such other person regardless of whether he [or she] is paid directly by such other person or by the original employer. *The employee shall be deemed to remain in the sole employment of the original employer if the insurer of the original employer receives premiums based on the employee's wages.*

> Where by reason of there being an independent contractor, or for any other reason, the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on is not the direct employer of persons there employed such persons shall nevertheless be deemed his [or her] employees within the meaning of this Act, unless the direct employer has provided insurance for the payment of compensation to them.

*LRB Study* at 121 (emphasis added to highlight how original recommendation varies from current statutory provision on borrowed employees).

In explaining the foregoing recommendations, Professor Riesenfeld stated:

The "contractor clause" contained in the existing definition of "employer" is rephrased and transferred to the definition of "employee". This positional shift is made for the reason that the effect of the clause is to make the employees of the contractor the "statutory employees" of the owner of the business who has contracted out the particular job.

It is recommended, however, that the present rule be qualified so as to place either the exclusive or the primary liability on the direct employer, if he [or she] has taken out compensation insurance and the wages of the employee figure in the premium base. *The difference between placing the "exclusive" liability on the employer rather than the "primary" liability lies in the effect of this distinction on the tort liability of the owner and his [or her] other employees. If it is desired to shield the owner and his [or her] other employees from third party liability, then secondary liability must be left imposed upon the owner. Vice versa, if it is desired to give the victim in cases of negligence an action at law either against the owner or his [or her] negligent employees, the direct employer must be exclusively liable.*

*The suggested form of the statute makes the insured direct employer exclusively liable.*

*The rules respecting "borrowed employees" are likewise retained, but again with the suggestion of a qualification, if the lender has a policy covering the loaned employee. Choice between "primary" and "exclusive" liability of the insured lender in that case is again made in favor of exclusive liability.*

*Id.* at 99–100 (emphases added).

The Senate passed Professor Riesenfeld's recommended legislative change to the statutory provision governing borrowed employee situations, explaining that "[t]he rules respecting 'borrowed employees' are likewise retained, but again exclusive liability is placed on the lender if he [or she] has a policy covering the loaned employee." Senate Stand. Com. Rep. No. 334 on Senate Bill No. 853, which was subsequently enacted as Act 116, 1963 Haw. Sess. Laws 103, 1963 Senate Journal at 789. The House revised the Senate version of the "borrowed employee" provision to what it substantively is today. In explaining the House amendment, the House Labor and Employment Problems Committee stated:

1. The paragraph in section 97–1 referring to situations in which an employee is loaned or hired out to another person has been modified by changing the last sentence thereof to read as follows:

The employee shall be deemed to remain in the sole employment of the original employer if such other person fails to secure compensation to the employee as provided in section 97–120.

The House amendment thus expanded on Professor Riesenfeld's recommendation by ensuring that the original employer would remain the "sole" or "exclusive" employer of a borrowed employee if the borrowing employer failed to secure compensation for the employee. By retaining Professor Riesenfeld's recommendation that "exclusive," as opposed to "primary," liability be statutorily imposed on either the borrowing or original employer, the legislature thereby preserved to the borrowed employee a common-law negligence action against the employer who did not qualify as the statutory "exclusive" employer for workers' compensation purposes.

■ We turn then to an examination of the facts in this case to determine whether HPM Defendants qualified as Frank's exclusive employer for workers' compensation purposes so as to be entitled to immunity from a negligence action by Frank pursuant to HRS § 386–5.

### D. Application of Hawai'i Law to the Facts of This Case

■ Pursuant to HRS § 386–1, three conditions must be present before HPM Defendants can be considered the exclusive employer of Frank for workers' compensation purposes: (1) Frank must have been loaned or hired out to HPM Defendants for the purpose of furthering HPM Defendants' trade, business, occupation, or profession, *Yoshino v. Saga Food Serv.*, 59 Haw. 139, 577 P.2d 787 (1978); (2) Frank must have come under the "control" of HPM Defendants, *id.*; and (3) HPM Defendants must have "secured compensation" to Frank as provided in HRS § 386–121.

### 1. The Purpose Test

It is undisputed that Frank was hired out to HPM Defendants for the purpose of furthering their trade or business. HPM Defendants needed additional manpower in their mill and therefore hired Frank through Express. Frank worked in HPM Defendants' mill and was injured doing the same work that HPM Defendants' regular employees were doing. Therefore, all of HPM Defendants' workers, including Frank, were directly furthering the trade or business of HPM Defendants.

### 2. The Control Test

■ The question of whether control of a lent employee has been transferred to a special employer is one that must necessarily be made on a case-by-case basis. However, the supreme court has instructed that

> [t]he paramount consideration in determining whether the alleged special employer is in fact a special employer of the worker . . . is whether the alleged special employer exercised control over the details of the work of the loaned employee and such control strongly supports the inference that a special employment exists. This view focuses on the general relationship between the claimant and the employers during the course of employment rather than upon the relative ability of the lending employer as compared to that of the borrowing employer to prevent the accident which caused the injury.

*Kepa v. Hawaii Welding Co.*, 56 Haw. 544, 548–49, 545 P.2d 687, 691 (1976). Factors to be considered in determining whether control of a lent employee has been transferred to the special employer include: whether the "lent employee was using heavy equipment that was owned by the lending employer," *id.* at 549, 545 P.2d at 691; who directly supervised the employee, *Yoshino*, 59 Haw. at 146, 577 P.2d at 792; who dictated the working conditions and controlled the on-the-job performance of the employee, including the employee's "hours of employment, holiday schedule, break periods and so forth," *id.*; whether the borrowing employer was entitled to fire the employee or change the employee's wage and benefits schedule if good cause were shown, *id.*; whether the employee used the borrowing employer's tools and/or equipment, *Harter v. Hawaii [Hawai'i] County*, 63 Haw. 374, 378, 628 P.2d 629, 632 (1981); whether the borrowing employer could reject the employee; whether the employee know-

ingly consented to the employment situation; and whether the employee's assignment was for a constant and extended period as opposed to sporadic or short durational assignments. *Danuser v. J.A. Thompson & Son, Inc.,* 3 Haw.App. 564, 568, 655 P.2d 887, 891 (1982).

The record in this case is clear that HPM Defendants had control over Frank and his work at their mill. All of Frank's work was done at the direction of HPM Defendants' management employees. *Danuser,* 3 Haw. App. at 567, 655 P.2d at 890. HPM Defendants had "the power and authority to dictate time and place; work rules; manner of work; quality; and all other aspects relating to [Frank's] performance at [HPM's mill]." *Yoshino,* 59 Haw. at 146, 577 P.2d at 792. Frank utilized, and was in fact injured by, a radial saw that was owned by HPM Defendants. *Harter,* 63 Haw. at 378, 628 P.2d at 632. Furthermore, HPM Defendants had the power to accept or reject any worker, including Frank, who was sent by Express. *Danuser,* 3 Haw.App. at 568, 655 P.2d at 891. Finally, the record indicates that Frank "knowingly consented to the establishment of the employment relationship with" HPM Defendants. *Id.*

### 3. *The "Secured Compensation" Test*

Because the record indicates that Frank (1) was loaned or hired out to HPM Defendants for the purpose of furthering HPM Defendants' trade, business, occupation, or profession, and (2) was under the control and supervision of HPM Defendants, HPM Defendants were clearly Frank's special employer for workers' compensation purposes and were exclusively responsible for payment of all workers' compensation benefits to Frank. Pursuant to HRS § 386-1, however, Frank would "be deemed to remain in the sole employment of [Express] if [HPM Defendants failed] to secure compensation to [Frank] as provided in [HRS § ] 386-121."

HRS § 386-121 states in relevant part:

**Security for payment of compensation; misdemeanor.** (a) Employers ... shall secure compensation to their employees in one of the following ways:

(1) *By insuring and keeping insured the payment of compensation with any stock, mutual, reciprocal, or other insurer authorized to transact the business of workers' compensation insurance in the State;*

(2) By depositing and maintaining with the state director of finance security satisfactory to the director of labor and industrial relations securing the payment by the employer of compensation according to the terms of this chapter;

(3) Upon furnishing satisfactory proof to the director of the employer's solvency and financial ability to pay the compensation and benefits herein provided, no insurance or security shall be required, and the employer shall make payments directly to the employer's employees, as they may become entitled to receive the same under the terms and conditions of this chapter;

(4) By membership in a workers' compensation self-insurance group with a valid certificate of approval under section 386-194; or

(5) By membership in a workers' compensation group insured by a captive insurer under chapter 431, article 19.

(Emphasis added.)

Subparagraphs (2), (3), (4), and (5) of HRS § 386-121(a) are obviously not applicable here. The dispositive question then, is whether HPM Defendants satisfied the requirement of subparagraph (1) of HRS § 386-121(a), thereby securing compensation for Frank, by paying Express a fee, part of which was used to provide workers' compensation insurance for Frank. We answer this question in the negative.

Pursuant to HRS § 386-122 (1993), "[i]f the insurance so effected [by an employer] is under section 386-121(a)(1), the employer shall file with the [labor] director ... a notice of the employer's insurance together with a statement of benefits provided by the policy of insurance." In this case, it is undisputed that HPM Defendants did not cover Frank under their workers' compensation insurance policy. Instead, HPM Defendants *contracted* with Express to have Express provide workers' compensation insurance

coverage for Frank under Express's policy. Pursuant to HRS § 386–9 (1993), however, HPM Defendants were expressly prohibited from contracting out their liability for workers' compensation benefits. HRS § 386–9 states:

> **Contracting out forbidden.** Except as provided in section 386–78,[5] no contract, rule, regulation or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this chapter.

(Footnote added.) Therefore, any contract between HPM Defendants and Express to have Express cover Frank's workers' compensation liability did not relieve HPM Defendants of the requirement in HRS § 386–1 that they secure workers' compensation for Frank as provided in HRS § 386–121. Pursuant to HRS § 386–1, then, Express remained Frank's exclusive employer for workers' compensation purposes, and HPM Defendants were not immunized from Frank's negligence action.

## CONCLUSION

Under the purpose and control tests, HPM Defendants qualified as Frank's special employer for workers' compensation purposes. However, pursuant to HRS § 386–1, because HPM Defendants failed to "secure" workers' compensation for Frank in accordance with HRS § 386–121, Express, as Frank's original employer, was statutorily deemed to be Frank's exclusive employer for workers' compensation purposes. As Frank's exclusive employer, Express, but not HPM Defendants, was solely entitled to the immunity from negligence lawsuits provided by HRS § 386–5, the exclusivity of remedy provision of the workers' compensation law.

Accordingly, we reverse the circuit court's August 5, 1996 "Order Granting Defendants and Third–Party Plaintiffs Hawaii Planing

Mill Foundation and Hawaii Planing Mill, Ltd.'s Motion for Partial Summary Judgment Filed on June 7, 1996," vacate the December 2, 1996 "Final Judgment" of the circuit court, and remand for further proceedings consistent with this opinion.

---

5. HRS § 386–78 (1993) provides:

> **Compromise.** (a) No compromise in regard to a claim for compensation pending before the director shall be valid unless it is approved by decision of the director as conforming to this chapter and made a part of such decision; provided that any compromise in which the claimant waives or otherwise prejudices the claimant's right to reopen the claimant's case or to future medical benefits shall not be valid unless also approved in writing by the appellate board.
>
> (b) No compromise in regard to a claim for compensation shall be effected and approved in any appeal until after the director has been notified of the proposed terms thereof and has had an opportunity to be heard relative thereto.